614 A.2d 1134

**OFFICE OF DISCIPLINARY COUNSEL, Petitioner,**

v.

**Michael S. GEISLER, Respondent.**

Supreme Court of Pennsylvania.

Submitted April 11, 1991.

Decided Oct. 8, 1992.

Norma Chase, Pittsburgh, for respondent.

Samuel F. Napoli, Pittsburgh, for Asst. Disciplinary Counsel.

## OPINION OF THE COURT

ZAPPALA, Justice.

This matter comes before the Court on a Rule to Show Cause why Michael S. Geisler should not be disbarred. The Rule was issued on the Court's own motion, pursuant to Pennsylvania Rule of Disciplinary Enforcement 208(e)(3), after the Disciplinary Board had submitted a Report and Recommendation that Geisler be suspended from the practice of law for a period of three months. On March 4, 1988, a Petition for Discipline was filed at No. 17 DB 88, setting out seventeen charges representing forty-three violations of the Disciplinary Rules. In each instance Geisler was charged with neglecting a legal matter entrusted to him, in violation of DR 6–101(A)(3). He was also variously charged with failing, upon withdrawing

from employment, to promptly refund the unearned part of a fee paid in advance [DR 2–110(A)(3) ], intentionally failing to seek the lawful objectives of a client through reasonably available means under [DR 7–101(A)(1) ], intentionally failing to carry out a contract of employment entered into with a client under [DR 7–101(A)(2) ], failing to deliver, as requested, funds which the client was entitled to receive [DR 9–102(B)(4) ], and dishonesty, fraud, deceit, or misrepresentation [DR 1–102(A)(4) ].

On August 17, 1988, a second Petition for Discipline was filed at No. 86 DB 88, listing four additional charges representing nineteen violations of the Disciplinary Rules. Again, in each case Geisler was charged with neglect in violation of DR 6–101(A)(3). He was also variously charged again under DR 7–101(A)(1), DR 7–101(A)(2), and DR 9–102(B)(4), as well as DR 1–102(A)(6) [conduct that adversely reflects on a lawyer's fitness to practice law], DR 6–101(A)(1) [handling a legal matter which the lawyer knows or should know he is not competent to handle], DR 6–101(A)(2) [handling a legal matter without adequate preparation]; as to conduct occurring after April 1, 1988, violations of Rules of Professional Conduct 1.3 [duty to act with reasonable diligence and promptness], 1.4(a) [duty to keep client informed about status of a matter and to comply with reasonable requests for information], and 3.2 [duty to make reasonable efforts to expedite litigation consistent with client's interests] were alleged.

Pursuant to Pa.R.D.E. 208(b), the charges were presented to a hearing committee, which received a seventy-one page stipulation of facts as to the first filing and a twenty-two page stipulation as to the second. The Respondent also testified.

The complaints in these matters were filed by clients who first contacted Geisler between February and December of 1986, with the exception of one client who sought representation in March of 1987. The common scenario in these cases is that Geisler was retained to represent the clients in either divorce or bankruptcy proceedings (one client retained Geisler to execute a deed transfer). Thereafter, Geisler neglected to file the appropriate papers and failed to return his clients'

phone calls or otherwise communicate with the clients. In some instances, the papers were never filed and the clients were forced to retain new counsel, in other cases the papers were ultimately filed, but only after considerable delay, which Geisler explained through false statements.

The hearing committee concluded in each instance that Geisler had neglected a legal matter in violation of DR 6–101(A)(3), but that the evidence did not support a finding that he had acted intentionally so as to have violated DR 7–101(A)(1) or (2). The committee described Geisler as a young, inexperienced attorney, who had attempted to establish a high volume, low cost law practice. Through naivete and lack of business acumen, however, he took on a caseload that required him to do more than he was able at a cost less than needed to make a profit. According to the committee,

> [t]he evidence did not establish that the Respondent was involved in a scheme to obtain fees for services with the intention of not performing those services, but rather that Respondent, through ignorance, failed to perceive that it was impossible for him to provide appropriate services to all his clients. The record further disclosed that Respondent was aware of his mistakes and that despite his meager means, he had made reasonable attempts to complete his employment agreements.

Report of Hearing Committee at 2. With respect to Geisler's "explanations" to his clients, the committee accepted Geisler's testimony that he did not check the files before giving the clients information, and although the committee found violations of DR 1–102(A)(4), they also concluded that there was "no evidence which established that the mis-statements . . . were intentional." Report of Hearing Committee at 3.

The Disciplinary Board in large measure accepted the hearing committee's findings and conclusions. The Board, however, was more explicit in identifying the misrepresentations as violations of DR 1–102(A)(4). As the Board summarized

> In order to conceal his neglect, Respondent generally did not respond to client inquiries as to the status of legal matters. When he could not avoid a client, he told the

client what he believed the client wanted to hear without knowing the accuracy of his own statements. If the Respondent did not know the answer to a client inquiry, his obligation was to inform the client that he was uncertain. The record shows that the Respondent was overwhelmed with cases so that it does not seem likely that the Respondent could know the status of any given case without checking the case file. We find that the statements Respondent made to his clients, without knowing the accuracy of those statements are misrepresentations under DR 1–102(A)(4).

Report and Recommendations of the Disciplinary Board at 11–12.

Both the hearing committee and the Board identified *In re: Anonymous, No. 25 DB 83*, 29 Pa.D. & C.3d 246 (1984), as the only precedent similar to this on the facts. In that case the attorney was charged with eight violations of neglect of a legal matter as a result of operating a high volume, low cost practice. The discipline imposed was a suspension of six months. In comparing these cases, the Board noted that Geisler had committed a greater number of violations, but it also noted that the attorney in the prior case had ten years experience, had received numerous informal admonitions regarding similar neglect matters, and did not acknowledge culpability for his neglect. By comparison Geisler's inexperience, his lack of prior disciplinary history, his acknowledgment of responsibility and remorse, and his co-operation with Disciplinary Counsel were considered "mitigating" factors. Under the facts and the precedent, the Board considered a suspension to be appropriate, but not a lengthy one, thus the recommended three month suspension.

Upon our independent review of the record, we find that a suspension of six months is appropriate, to be followed by a one year period of probation during which Geisler shall be subject to the supervision of a "practice monitor". Such is necessary, we believe, to ensure that this Respondent truly appreciates the fact that the practice of law is a profession and

not simply a business, and to ensure that he has developed an adequate understanding of each.

The Rule to Show Cause entered on July 31, 1990 is discharged. The Respondent is hereby suspended from the practice of law for a period of six months. He shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ORDERED that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

NIX, C.J., and COPPY, J., did not participate in the decision of this case.

Papadakos, J., files a dissenting opinion in which Larsen, J., joins.

PAPADAKOS, Justice, dissenting.

I dissent from the majority's opinion because the proposed sanction, in my estimation, would have the effect of giving inexperienced attorneys a hunting license for unsuspecting clients.

My reading of the majority's decision is that our rules of neglect and competency virtually are being interpreted out of existence. Here we have the irony of an admittedly inexperienced attorney who nevertheless is sophisticated enough to know how to use his license to make a great deal of money. Inevitably, his folly leads him down the path of perdition as he neglects clients and then lies to them to cover up his tracks, making money all the while, of course. His original sin, as should be obvious, is incompetency in two respects: 1) he was incompetent to handle a large number of clients; and 2) more significantly, he was either outright incompetent or deliberately disregarded the rule of competency in deciding that he was competent to practice in that fashion.

A majority of my colleagues now are prepared to sanction him with a light suspension on the grounds that his inexperience is a mitigating factor.

If I understand them correctly, the majority members in this decision, therefore, propose the following guidelines: 1) an experienced attorney would not be susceptible to mitigation

for identical violations, but an inexperienced lawyer will be treated leniently; and 2) it must follow, therefore, that the rules of professional conduct do not contain a rule of competency.

I depart vigorously from this decision. Inexperience may be an explanation but, surely, it is not a justification. An attorney who contracts with a client *must* have at least the *minimal* competency, both intellectually and physically, to handle the case. Otherwise, the lawyer must refuse the representation, and that includes his inability to deal with the client because he is overburdened. A lawyer who does not understand these rules is incompetent to practice law.

We are beginning to see repeated conduct based on identical fact patterns. The public has an absolute right to be protected from such incompetent lawyers, and here as well as in future similar cases, I shall continue to insist on disbarment as the only proper remedy.

LARSEN, J., joins this dissenting opinion.