**In re Anonymous Nos. 52, 79 & 116 D.B. 92
and 30 D.B. 93**

Disciplinary Board Docket nos. 52, 79 & 116 D.B. 92 and 30 D.B. 93.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

PARIS, *Member,* November 28, 1994—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings

and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## HISTORY OF PROCEEDINGS

This report is a consolidation of four petitions for discipline brought by the Office of Disciplinary Counsel charging respondent with a pattern of professional misconduct involving neglect of legal matters for which respondent was retained or assigned, failure to communicate with clients, failure to return files and unearned fees upon termination of the attorney-client relationship and noncompliance with orders and directives of courts.

Between June 1992 and April 1993, the Office of Disciplinary Counsel filed four separate petitions for discipline. A three-count petition was filed at 52 D.B. 92 on June 9, 1992. On August 24, 1992, a two-count petition was filed at 79 D.B. 92. On November 25, 1992 a single-count petition was filed at 116 D.B. 92 and again on April 2, 1993, a two-count petition for discipline was filed at 30 D.B. 93. These petitions charged respondent with multiple violations of the following Disciplinary Rules and Rules of Professional Conduct:

D.R. 102(A)(5); D.R. 2-110(A)(1); D.R. 2-110(A)(2); D.R. 6-101(A)(3); D.R. 7-101(A)(1); D.R. 7-101(A)(3); D.R. 7-106(A); D.R. 7-106(C)(7); R.P.C. 1.16(c); R.P.C. 1.4(a); R.P.C. 1.5(b); R.P.C. 1.16(d); R.P.C. 1.3; R.P.C. 1.4(b); R.P.C. 8.4(d); R.P.C. 3.2.

The respondent did not file an answer to any of the four petitions for discipline.

On July 9, 1992 respondent was suspended from the practice of law by order of the Supreme Court.

The four petitions were consolidated for purposes of hearing and the matter was referred to Hearing Committee [ ] consisting of [ ] (Chairman), [ ], Esquire and [ ], Esquire.

A hearing was held on August 30, 1993, on these multiple petitions for discipline containing eight charges and 11 different matters during which respondent appeared pro se. Because respondent stipulated that his conduct described in at least one charge constituted a rule violation, the committee heard evidence on discipline to be imposed as well as on substantive violations in accordance with D. Bd. Rule 89.151(d)(1).

A report of the Hearing Committee was filed on February 22, 1994, recommending respondent be suspended for 18 months retroactive to July 19, 1992. Neither respondent nor the Office of Disciplinary Counsel filed a brief on exceptions to the report of the Hearing Committee. These matters were referred to the Disciplinary Board and adjudicated on April 8, 1994.

## FINDINGS OF FACT

(1) Petitioner, whose principal office is situated at Suite 400, Union Trust Building, 501 Grant Street, Pittsburgh, Pennsylvania 15219 is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and duty to investigate all matters involving alleged misconduct of any attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of said Rules of Disciplinary Enforcement. (S-1, D. Bd. Rule 85.5(a).)

(2) Respondent, [    ], was admitted to practice law in the Commonwealth of Pennsylvania on October 17, 1979. His current address is [    ]. Respondent is subject to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court. (S-2.)

(3) By order of the Supreme Court dated July 9, 1992, entered pursuant to Pa.R.D.E. 208(f), respondent was suspended from the practice of law. (S-3.)

## A. *No. 52 D.B. 92, Charge I: The [A] Matter*

(4) On or about January 16, 1991, respondent was retained by [B] to represent her brother, [A], in the appeal of his murder conviction, for which he had been sentenced to life imprisonment on January 8, 1991. (S-5.)

(5) At their meeting that day, respondent agreed to commence work on the case for a fee of $1,500. (S-7.)

(6) At the time, [C], Esquire, was counsel of record for [A]. (S-6.)

(7) Respondent stated that he would review the notes of testimony, discuss the matter with trial counsel, investigate whether there were any claims worth pursuing, and so advise [B]. (H.T. 49.)

(8) Respondent had not previously represented [B] or [A]. (S-8.)

(9) Respondent failed to communicate the basis or rate of his fee in writing to either [B] or [A]. (S-9.)

(10) On January 18, 1991, [B] provided to respondent copies of documents from the file of [A's] trial counsel. (S-10.)

(11) On January 19, 1991 [B] paid respondent $1,500. (S-11.)

(12) Thereafter, respondent failed to take prompt action with respect to [A's] case and failed to communicate with either [A] or [B]. (H.T. 17.)

(13) Respondent did not enter his appearance for [A]. (S-12.)

(14) In about April or May 1991, respondent contacted an investigator, [D], to locate witnesses. (H.T. 100-102.)

(15) Respondent did not request that [D] interview the witnesses about what they knew about the case, and the report does not contain any substantive information about it. (H.T. 106, ex. R-1.)

(16) [D] did not give respondent a prompt report of his work. (H.T. 53-54.)

(17) After January 19, 1991, [B] attempted to communicate with respondent by telephone on numerous occasions. (S-13.)

(18) Respondent failed or refused to accept or return most of her calls; when he did accept her calls, he attributed his failure to act to delay by an investigator. (S-14.)

(19) The investigator did not go to see [A] as evidenced by the fact that her brother told her that the investigator had not gone and the investigator admits that he did not interview [A]. (H.T. 17, 99.)

(20) By certified letter dated April 8, 1991, [B] discharged respondent as counsel for [A]; requested that respondent release [A's] file to her; and requested that he refund to her the $1,500 fee. (S-15.)

(21) As of that date, respondent did not have a report from [D]. (H.T. 59.)

(22) By letter dated May 15, 1991, [A] confirmed that he discharged respondent as his counsel. (S-18.)

(23) Respondent failed to refund the unearned fee or to return the file as requested. (S-19.)

(24) The file did not contain any documents generated by respondent during the period of the representation. (H.T. 63-64.)

(25) On October 4, 1991, [B] obtained a judgment against respondent in the [    ] Court in the amount of $1,500. (S-16.)

(26) Respondent has not satisfied that judgment. (S-17.)

(27) The first time that respondent mentioned an investigator's report to [B] was in court, after she obtained the judgment, when he promised to get it to her after the investigator completed it. (H.T. 18.)

(28) The experience with respondent created stress for [B] and personal problems between herself and her husband and made her reluctant to seek assistance of an attorney to resolve legal problems. (H.T. 14, 15.)

(29) Respondent's conduct in the [B]/[A] matter violated the following Rules of Professional Conduct:

(a) R.P.C. 1.4(a), which states that a lawyer shall keep a client informed about the status of a matter and promptly comply with reasonable requests for information;

(b) R.P.C. 1.5(b), which states that when the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, in writing,

before or within a reasonable time after commencing the representation; and

(c) R.P.C. 1.16(d), which states that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned.

B. *No. 52 D.B. 92, Charge II: The [E] Matter*

(30) By order dated May 2, 1991, the Honorable [F] appointed respondent to represent [E], a/k/a [    ], for sentencing and on appeal, in a matter captioned *Commonwealth v. [E],* Court of Common Pleas, [    ], no. [    ]. (S-21.)

(31) Respondent was promptly notified of his appointment and was attached by the court for sentencing on June 3, 1991. (S-22.)

(32) Shortly after respondent was appointed, [E] so notified him by telephone. (S-23.)

(33) In late May 1991, respondent discussed the matter on the telephone with [E], at which time respondent requested that [E] provide him with copies of his notes of testimony and other documents concerning his case, which respondent promised to copy and return to [E] promptly. (S-24.)

(34) The following day [E] sent to respondent the notes and other documents. (S-25.)

(35) Respondent failed to appear in court on June 3, 1991, and sentencing was deferred to June 5, 1991. (S-26.)

(36) On June 5, respondent requested a postponement on the basis that he was on trial in federal court, and the sentencing was continued to June 17, 1991. (S-27.)

(37) On June 17, 1991, respondent appeared in court on behalf of [E], at which time: post-trial motions were denied; [E] was sentenced; respondent acknowledged receipt of the documents that [E] had sent him; respondent advised [E] that he had not yet copied his documents and that he would do so promptly. (S-28.)

(38) In that conversation, [E] asked that respondent file a notice of appeal on his behalf. (S-29.)

(39) [E] expressed to respondent that he felt that he had been convicted unjustly. (H.T. 84, 85.)

(40) Respondent failed to file a timely notice of appeal. (S-30.)

(41) Respondent did not petition the court to withdraw as counsel for [E]. (S-31.)

(42) After one communication on a date between June 17, 1991, when he saw [E] in court, and June 26, when [E] started writing to him, respondent had no further contact with [E]. (H.T. 77, 79-80.)

(43) Respondent did not tell [E] that he would not file the appeal.

(44) By letter dated June 26, 1991, [E] requested that respondent send to him copies of various documents from his file. (S-32.)

(45) By letter dated July 13, 1991, [E] again asked that respondent release his documents to him and asked

that respondent advise him whether he had filed a motion for reconsideration of sentence and notice of appeal and what action respondent was taking on his case. (S-33.)

(46) By letter dated August 4, 1991, [E] reiterated the requests in his July 13 letter. (S-34.)

(47) In each of these letters, [E] identified himself by both the names [    ] and [    ]. (Exs. P-13, P-14, P-15.)

(48) Respondent failed to respond to those letters. (S-35.)

(49) Respondent did not send [E] his documents until June 1992, but then failed to use a prison number identifying him, as a result of which [E] did not receive his documents the first time they were sent. (H.T. 86, 92.)

(50) Respondent's conduct in [E] matter violated the following Rules of Professional Conduct:

(a) R.P.C. 1.3, which states that a lawyer shall act with reasonable diligence and promptness in representing a client;

(b) R.P.C. 1.4(a); and

(c) R.P.C. 8.4(d), which states that it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.

### C. *No. 52 D.B. 92, Charge III:* *The Contempt Matter*

(51) On February 14, 1991, respondent telephoned the chambers of the Honorable [G] and advised [H], Judge [G's] secretary, that he would be in [    ] the following week to enter his appearance in a matter captioned *Com-*

*monwealth v. [I],* Court of Common Pleas, [    ] County, no. [    ]. (S-36.)

(52) By letter to Judge [G] dated February 15, 1991, respondent reiterated this conversation. (S-37.)

(53) On March 7, 1991, [H] telephoned respondent and advised him that the case was scheduled for March 25, at which time he stated that he would be in [    ] early the following week to enter his appearance for [I]. (S-39.)

(54) On March 19, 1992, [H] called respondent's office and was advised that he was in [    ]. (S-39.)

(55) Respondent did not enter his appearance at any time prior to March 22, 1991. (S-40.)

(56) On March 22, 1991, respondent appeared in Judge [G's] courtroom and entered his appearance in the case, and trial was scheduled for June 5, 1991. (S-41.)

(57) By letter dated April 1, 1991, [J], Esquire, [I's] former counsel, sent to respondent the discovery he had received previously in the case. (S-42.)

(58) On June 5, 1991, respondent did not appear for trial, and Judge [G] scheduled a proceeding for June 27, 1991, to schedule a trial date, and respondent was so advised. (S-43.)

(59) Commencing on or after June 5, 1991, [H] attempted to contact respondent by telephone to schedule a new trial date and to request that he return a completed postponement form. (S-44.)

(60) Respondent did not send a postponement form as requested by [H]. (S-45.)

(61) Respondent did not return calls from [H] until the afternoon of June 27, at which time he stated that he would not be available until after July 23. (S-46.)

(62) On June 27, [H] notified respondent that trial was scheduled for July 29, 1991 and again asked him to provide a postponement form. (S-47.)

(63) By letter dated June 27, [H] forwarded to respondent a postponement form. (S-48.)

(64) Respondent failed to return the completed form. (S-49.)

(65) On Friday afternoon, July 26, 1991, respondent called Judge [G] and advised that he would be in trial in [    ] on July 29. (S-50.)

(66) On July 29, 1991, respondent failed to appear for trial, and in the afternoon, respondent called Judge [G's] chambers, at which time he stated that he could not appear on July 29, but that he would appear for trial on July 31. (S-51.)

(67) On July 31, 1991, respondent failed to appear for trial; new counsel was appointed for [I]; the case was continued to September 23, 1991; respondent called and advised [H] that he had missed the train; and [H] asked respondent to advise the court when he would be available for a contempt proceeding. (S-52.)

(68) By order dated August 2, 1991, Judge [G] issued a rule to show cause why respondent should not be held in contempt, returnable August 20, 1991, which was served upon respondent. (S-53, S-54.)

(69) Respondent failed to appear on August 20, 1991, but called [H] and advised that he would appear on August 27. (S-55, S-56.)

(70) On August 22, 1991, Judge [G] issued a warrant for respondent's arrest. (S-57.)

(71) On August 27, 1991, respondent failed to appear before Judge [G]. (S-58.)

(72) On August 28, 1991, respondent was arrested. (S-59.)

(73) On August 29, 1991, Judge [G] held a hearing in the contempt proceeding, at which time respondent gave various excuses for his failure to carry out the court's orders and directives. (S-60.)

(74) By order dated October 3, 1991, Judge [G] held respondent in criminal contempt and sentenced him to pay a fine of $100 and costs in the amount of $1,051.94. (S-61.)

(75) The order was served upon respondent by certified mail on November 15, 1991. (S-62.)

(76) As of this date, respondent has failed to pay the fine and costs. (S-63, H.T. 126.)

(77) Respondent's conduct in the [I] contempt matter violated the following Rules of Professional Conduct:

(a) R.P.C. 3.2, which states that a lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client; and

(b) R.P.C. 8.4(d).

## D. *No. 79 D.B. 92, Charge I: The [K] Matter*

(78) By order dated July 15, 1986, the Honorable [L], Judge of the [    ] Court of Common Pleas, appointed respondent to represent the defendant in a matter captioned *Commonwealth v. [K]* in a pending appeal from the Superior Court to the Supreme Court of Pennsylvania. (S-64.)

(79) By letter dated September 12, 1986, respondent was notified of his appointment. (S-65.)

(80) On September 17, 1986, respondent filed a praecipe to enter his appearance in the case. (S-66.)

(81) By letter dated October 6, 1986, mailed to respondent at [    ], the Supreme Court Prothonotary notified respondent that he was to file a praecipe for appearance promptly and a petition for allowance of appeal within 30 days of the notice. (S-67.)

(82) On October 16, 1986, respondent filed a petition for leave to withdraw as counsel. (S-68.)

(83) By order dated November 5, 1986, the Supreme Court denied the petition for leave to withdraw. (S-69.)

(84) Respondent failed to file the petition for allowance of appeal. (S-70.)

(85) By letter to the prothonotary dated July 17, 1987, with an inside address of [    ], respondent stated that he had changed offices since his appointment in the matter and "only recently received your last communication," and requested that his "desire to withdraw from this case will be reconsidered by the court." (S-71.)

(86) On November 17, 1987, respondent again filed a petition for leave to withdraw as counsel. (S-72.)

(87) By order dated December 14, 1987, the Supreme Court again denied the petition to withdraw. (S-73.)

(88) Respondent failed to take any action to pursue [K's] appeal. (S-74.)

(89) By certified letter dated February 16, 1990, mailed to respondent at [    ], the Supreme Court Prothonotary requested that he contact that office concerning the petition for allowance of appeal. (S-75.)

(90) By letter dated February 27, 1991, addressed to [    ], the prothonotary again asked that respondent contact that office concerning the matter. (S-76.)

(91) By letter dated February 13, 1992, addressed to respondent at [    ], the prothonotary again asked that respondent contact that office concerning the matter. (S-77.)

(92) Respondent failed to contact the prothonotary at any time concerning the matter. (S-78.)

(93) Respondent maintained no listing in the [    ] Bar Association Legal Directory from 1986 through 1992. (S-79.)

(94) Respondent's attorney registration statements for the period July 1986 through June 1993 show the following office addresses: 1986 - 1987 [    ]; 1987 - 1990 [    ]; 1990 - 1992 [    ]. (S-80.)

(95) Respondent utilized offices at the following locations: 12/87 - 1/88 [    ]; 4/91 - 7/92 [    ]. (S-81.)

(96) Respondent's conduct in the [K] matter violated the following Disciplinary Rules of the Code of Professional Responsibility and Rules of Professional Conduct:

(a) D.R. 1-102(A)(5), which states that a lawyer shall not engage in conduct that is prejudicial to the administration of justice;

(b) D.R. 2-110(A)(2), which states that a lawyer shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules;

(c) D.R. 6-101(A)(3) which states that a lawyer shall not neglect a legal matter entrusted to him;

(d) D.R. 7-101(A)(1), which states that a lawyer shall not intentionally fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules;

(e) D.R. 7-101(A)(3), which states that a lawyer shall not intentionally prejudice or damage a client during the course of the professional relationship;

(f) D.R. 7-106(A), which states that a lawyer shall not disregard or advise his client to disregard a standing rule of a tribunal or a ruling of a tribunal made in the course of a proceeding, but he may take appropriate steps in good faith to test the validity of such rule or ruling;

(g) D.R. 7-106(C)(7), which states that, in appearing in his professional capacity before a tribunal, a lawyer shall not intentionally or habitually violate any established rule of procedure or of evidence;

(h) R.P.C. 1.3;

(i) R.P.C. 1.16(c), which states that when ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation;

(j) R.P.C. 1.16(d);

(k) R.P.C. 3.2; and

(l) R.P.C. 8.4(d).

### E. *No. 79 D.B. 92, Charge II: The Pattern*

(97) During the period commencing no later than 1987 and continuing to early 1992, respondent engaged in a pattern of conduct in which he failed to comply with court rules, orders and directives in criminal appellate matters in the Superior Court of Pennsylvania, including but not limited to the following:

(a) *Commonwealth v. [M]*, no. [ ]: respondent failed to file a timely brief, resulting in the dismissal of the appeal on September 3, 1987;

(b) *Commonwealth v. [N]*, no. [ ]: respondent failed to file a statement of matters complained of on appeal as ordered, resulting in dismissal of the appeal on January 1, 1988;

(c) *Commonwealth v. [O]*, no. [ ]: respondent failed to file a timely brief, resulting in dismissal of the appeal by order dated June 13, 1988;

(d) *Commonwealth v. [P]*, no. [ ]: respondent failed to file a timely brief, resulting in the dismissal of the appeal on March 16, 1989;

(e) *Commonwealth v. [Q]*, no. [     ]: respondent failed to file a timely brief, resulting in the dismissal of the appeal on July 5, 1989; and

(f) *Commonwealth v. [R]*, no. [     ]: respondent failed to file a statement of matters complained of on appeal, as ordered, resulting in the dismissal of the appeal on August 16, 1989;

(g) *Commonwealth v. [S]*, no. [     ]: respondent failed to file a timely notice of appeal, resulting in the dismissal of the appeal on January 7, 1992. (S-82.)

(98) Respondent's conduct in the matters set forth in paragraph 97 violates the following Disciplinary Rules and Rules of Professional Conduct:

(a) D.R. 1-102(A)(5);

(b) D.R. 2-110(A)(1);

(c) D.R. 2-110(A)(2);

(d) D.R. 6-101(A)(3);

(e) D.R. 7-101(A)(1);

(f) D.R. 7-101(A)(3);

(g) D.R. 7-106(A);

(h) D.R. 7-106(C)(7);

(i) R.P.C. 1.3;

(j) R.P.C. 1.16(c);

(k) R.P.C. 1.16(d);

(l) R.P.C. 3.2; and

(m) R.P.C. 8.4(d).

*F. No. 116 D.B. 92: The [T] Matter*

(99) From August to October 1990, respondent represented [T] in a matter captioned *[U] v. [T].* (S-83.)

(100) In August 1990, [T] supplied respondent with various documents relating to aspects of the case which had been handled by a prior attorney, [V], Esquire; the transcript of a landlord/tenant hearing; a waiver for the immediate eviction of [U]; a notice of appeal filed on behalf of [U]; and documents pertaining to the arrest of [U]. (S-84.)

(101) The case in which respondent represented [T] was settled in October 1990. (S-85.)

(102) Thereafter, [T] required the documents in her file to pursue a related matter in [    ]. (S-86.)

(103) [T] contacted respondent by telephone and went to his office on several occasions commencing in late October or early November of 1991 and continuing through early 1992 and requested that he release the file to her. (S-87, H.T. 36.)

(104) Respondent told [T] that he would locate the file and make it available to her. (H.T. 121.)

(105) Respondent failed to make the file available to her. (S-88.)

(106) On one occasion, respondent requested that [T] pick up her files at his office, but upon her arrival there, he told her that the papers could not be found and might be at another location. (S-89, H.T. 37.)

(107) By letters dated May 19 and June 13, 1992, [T] again requested that respondent send to her all of her documents. (S-90.)

(108) Respondent failed to respond to the letters or to comply with [T's] requests. (S-91.)

(109) [T] was worried, annoyed, and angry because of the stress of having to go to hearing without the documents. (H.T. 35.)

(110) [T] was able to proceed in the related case only because the defendant did not appear, and she obtained a default judgment. (H.T. 34.)

(111) The experience with respondent led [T] to have a low opinion of lawyers. (H.T. 35.)

(112) Respondent's conduct in the [T] matter violated the following Rule of Professional Conduct:

R.P.C. 1.16(d).

G. *No. 30 D.B. 93, Charge I: The [W] Matter*

(113) On June 26, 1992, [W] retained respondent to represent her son, [X], in criminal charges pending against him in the [NN] Court of Common Pleas. (S-93.)

(114) Respondent advised [W] that he would represent [X] for a fee of $750. (S-94.)

(115) [W] paid respondent $750 as he requested. (S-95.)

(116) Respondent had not previously represented [X] or [W]. (S-96.)

(117) Respondent failed to reduce his fee agreement with [W] to writing at or within a reasonable time of his retention. (S-97.)

(118) On June 29, 1992, respondent entered his appearance for [X] and requested a continuance to prepare the case, and the case was continued to August 28, 1992. (S-98.)

(119) Thereafter, respondent failed to take any action to carry out the representation of [X], to communicate with the client or [W], or to respond to her efforts to reach him by telephone. (S-99.)

(120) After his suspension on July 9, 1992, respondent failed to advise [W] or [X] that he would be unable to represent [X]; to comply with Pa.R.D.E. 217(b); to withdraw as counsel for [X]; or to refund the unearned fee. (S-100, S-101.)

(121) Thereafter, [W] attempted to contact respondent by telephone, but he did not respond to the messages which she left for him. (S-102.)

(122) [X] had a scheduled court appearance on August 28, 1992, at which time he was advised by the court of respondent's inability to represent him. (S-103.)

(123) In November and December 1992, [W] wrote to respondent to request that he refund the unearned fee. (S-104.)

(124) Respondent failed to refund the fee or to respond to her letter. (S-105.)

(125) Respondent's conduct in the [W] matter violated the following Rules of Professional Conduct and Pennsylvania Rules of Disciplinary Enforcement:

(a) R.P.C. 1.4(a) (S-106.A.);

(b) R.P.C. 1.5(b) (S-106.C.);

(c) R.P.C. 1.16(d) (S-106.D.); and

(d) Pa.R.D.E. 217(b), which states that a formerly admitted attorney shall promptly notify, or cause to be notified by registered or certified mail, return receipt requested, all clients who are involved in pending litigation

or administrative proceedings, and the attorney or attorneys for each adverse party in such matter or proceeding, of the ... suspension ... and consequent inability of the formerly admitted attorney to act as an attorney after the effective date of the ... suspension .... The notice to be given to the client shall advise the prompt substitution of another attorney or attorneys in place of the formerly admitted attorney. In the event the client does not obtain substitute counsel before the effective date of the ... suspension ...., it shall be the responsibility of the formerly admitted attorney to move in the court or agency in which the proceeding is pending for leave to withdraw.

H. *No. 30 D.B. 93, Charge II: The [Y] Matter*

(126) In March 1989, [Y] was injured as a result of a fall on the premises of Dr. [Z], [AA] Medical Offices. (S-107.)

(127) Shortly thereafter, she retained respondent to represent her in claims relating to her injuries. (S-108.)

(128) Respondent had previously represented [Y's] sons in criminal cases. (H.T. 23, 29.)

(129) Respondent told [Y] that he would seek a large recovery for her from the fall, including enough to pay the doctors, pay respondent's fee, and leave some money for her, also. (H.T. 24.)

(130) By letter dated April 14, 1989, respondent notified [BB] Insurance Company, insurer of [AA] Medical, of his representation of [Y]. (S-109.)

(131) Upon request of its adjusters, acting for [BB] Mutual, respondent forwarded records for [Y] to the adjuster under cover of a letter dated May 5, 1989. (S-110.)

(132) [Y] treated with [CC], to whom respondent referred her, for over a year, except for a period of about a week when she went on vacation. (H.T. 24-25, 30, ex. P-68.)

(133) [Y] stopped treating with [CC] because she had another accident and was going to bring another case, but she could not afford further treatment because respondent did not complete the first case. (H.T. 26.)

(134) Representatives of [BB] wrote to respondent in November 1989, and February and May 1990, to follow up on the claim. (S-111.)

(135) The records of [BB] contain no record of any response from respondent. (S-112.)

(136) After May 1989, respondent failed to take any action to pursue [Y's] claim. (H.T. 67, 68.)

(137) Respondent did not file suit on behalf of [Y]. (H.T. 32, 74.)

(138) After she completed treatment, respondent advised [Y] that he was trying to discuss the matter with the insurance company, but that they were not responding, and he would "put a judgment against" the insurance company in [    ]. (H.T. 25.)

(139) Respondent did not write to [CC] for a final report, but he did receive a record of her treatment dates. (H.T. 69, 70 ex. P-68.)

(140) On several occasions during the representation [Y] attempted to reach respondent by telephone and wrote to him to obtain information concerning her case. (S-113.)

(141) Respondent failed to communicate with [Y] concerning her claim or to respond to her efforts to communicate with him. (H.T. 27.)

(142) Respondent failed to advise [Y] that he did not intend to pursue her claim. (H.T. 27, 71, 74.)

(143) Respondent failed to advise [Y] of his suspension on July 9, 1992, as required by Pa.R.D.E. 217(a). (H.T. 27-28.)

(144) After that date, respondent was unavailable by telephone and failed to respond to [Y's] letters and calls. (S-115.)

(145) [Y] did not receive any recovery from her fall at Dr. [Z's] office. (H.T. 28.)

(146) As a result of her dealings with respondent, [Y] does not trust lawyers. (H.T. 28.)

(147) Respondent's conduct in the [Y] matter violated the following Rules of Professional Conduct and Pennsylvania Rules of Disciplinary Enforcement:

(a) R.P.C. 1.3;

(b) R.P.C. 1.4(a);

(c) R.P.C. 1.16(d); and

(d) Pa.R.D.E. 217(a).

## DISCUSSION

As has been demonstrated by Office of Disciplinary Counsel, the evidence before the Hearing Committee, most of which is stipulated to by respondent demonstrates an extensive pattern of misconduct by respondent, during a period in excess of five and one-half years. The misconduct of respondent impacted both his clients and the

judicial system. In 11 cases, he was either appointed or retained to represent clients and failed to protect their interest in the most minimal way, in most instances causing substantial harm to their legal rights and expectations. It is further pointed out by Office of Disciplinary Counsel that even in those cases where he purported to have taken some action in the representation of his clients, it was insufficient to preserve the client's rights and the client in some cases was precluded from any further remedy. Respondent in his defense attempted to shift responsibility for the harm done to the clients, to the clients themselves rather than acknowledging his own responsibility as an attorney. Respondent also contended that his conduct was a result of his failure to adequately manage his law office.

Respondent's conduct also demonstrated disrespect for the courts, the court rules and directives. In addition, respondent failed to adhere to briefing schedules, to file appeals in a timely fashion and to appear as directed and to pay a fine for being in contempt.

It is petitioner's position that because of these aggravating circumstances, and because respondent offered no mitigation for his misconduct, the appropriate suspension in this case is one which will require a reinstatement proceeding. This conclusion is bolstered by the lack of any factual basis upon which to conclude that his prior discipline and his suspension to date have resulted in meaningful changes in his approach to the practice of law. A similar analysis and result are found in many previous disciplinary cases.

Perhaps most similar to the facts are those found in a series of cases involving the same respondent. In *In*

*re Anonymous No. 24 D.B. 78,* 11 D.&C.3d 419 (1979), he received a private reprimand for failing to return an unearned fee, which was a condition of an informal admonition. In his next case, he received a three-month suspension for neglect of one client's case. *In re Anonymous No. 24 D.B. 80,* 20 D.&C.3d 214 (1981), respondent's neglect of a case where he was retained for post-trial proceedings, as well as failure to file a master's report in a divorce, which were the fourteenth and fifteenth charges sustained against him in 12 years, earned him consecutive 21-month suspension in *In re Anonymous No. 37 D.B. 81,* 23 D.&C.3d 411 (1982).

In that case the board rejected the respondent's arguments that his discipline should be mitigated because he was a proficient lawyer who provided a great deal of community service, stating:

"A client has the right to expect that his legal matters will be attended to promptly and professionally even by the most active and well-motivated lawyer after the lawyer accepts the representation." *Id.* at 415.

Finally, that respondent was suspended for 24 months, retroactive and concurrent to the prior suspensions, for charges relating to similar conduct with respect to nine additional clients.

*In re Anonymous No. 21 D.B. 82,* 29 D.&C.3d 22 (1984), the pattern of conduct discussed is strikingly similar to that of respondent here: the respondent was engaged, then became impossible to contact, failed to return telephone calls or answer letters, failed to attend scheduled court proceedings, failed to return unearned fees except

on certain occasions after being compelled to do so by disciplinary proceedings. *Id.* at 23.

Respondent lacked the excuse of the attorney in *Office of Disciplinary Counsel v. Geisler,* 532 Pa. 56, 614 A.2d 1134 (1992), who was suspended for six months for 21 charges of neglect, failure to refund unearned fees, lack of diligence, and failure to communicate. The court found as mitigation the fact that Geisler was young and relatively inexperienced when he took on too many cases in an effort to establish a high-volume, low-cost practice; it also found that his acceptance of responsibility and re- morse somewhat offset the misrepresentations he made to conceal his neglect. *Id.* at 59-60, 614 A.2d at 1135-36. In the case before this board, respondent had been prac- ticing for six years when he began his pattern of neglect, and continued it for the next six.

The respondent in *In re Anonymous No. 91 D.B. 90,* 14 D.&C.4th 597 (1992) was suspended for a year and a day (subjecting him to the requirement of a hearing prior to reinstatement) for failure to pursue two cases for which he was engaged, a divorce action and a driver's license revocation proceeding, to keep the client in- formed, and to return unearned fees. Like respondent here, the respondent showed an inability to acknowledge his errors and accept responsibility for his conduct. *Id.* at 606.

Failure to file a brief and argue post-trial motions in one criminal case resulted in a three-month suspension in *In re Anonymous No. 52 D.B. 89,* 10 D.&C.4th 351 (1990). Yet two charges of neglect of divorce matters, failure to communicate with the client, and failure to return fees and files upon discharge, all resulting, as here, in prejudice to the clients, warranted disbarment

in *In re Anonymous No. 15 D.B. 81,* 22 D.&C.3d 254 (1981).

In light of respondent's repeated and extensive violations of the Disciplinary Rules and the Rules of Professional Conduct, we conclude that a two-year suspension from the practice of law retroactive to July 9, 1992, is necessary to protect the public interest and maintain the integrity of the bar.

## RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that respondent [    ] be suspended from the practice of law for a period of two years retroactive to July 9, 1992.

It is further recommended that the court direct that respondent pay all the necessary expenses incurred in the investigation and processing of this matter pursuant to Rule 208(g), Pa.R.D.E.

Mr. Schiller did not participate in the adjudication.

## ORDER

And now, December 28, 1994, upon consideration of the report and recommendations of the Disciplinary Board dated November 28, 1994, it is hereby ordered that [respondent], be and he is suspended from the bar of this Commonwealth for a period of two years retroactive to July 9, 1992, and he shall comply with all the provisions of Rule 217 Pa.R.D.E.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Justice Montemuro, who is sitting by designation, did not participate in this matter.