# In re Anonymous Nos. 56 and 78 D.B. 82, 25 D.B. 83, 74 D.B. 87 and 12 D.B. 88

Disciplinary Board Docket nos. 56 and 78 D.B. 82, 25 D.B. 83, 74 D.B. 87 and 12 D.B. 88.

LIEBER, *Member,* December 11, 1995—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above-captioned petition for reinstatement.

## HISTORY OF PROCEEDINGS

On January 24, 1994, petitioner [     ] filed a petition for reinstatement. Petitioner was disbarred by order of the Supreme Court of Pennsylvania dated September

16, 1992. This order made the disbarment retroactive to May 21, 1986. The matter was referred to Hearing Committee [ ] comprised of Chairperson [ ], Esquire, and Members [ ], Esquire, and [ ], Esquire. The reinstatement hearing was held on July 18, 1994. Chairperson [ ] was unable to participate and the hearing proceeded with a quorum of two as permitted under Rule 206(a), Pa.R.D.E. The petitioner appeared pro se. Office of Disciplinary Counsel was represented by [ ], Esquire.

On March 7, 1995, the Hearing Committee filed its report and recommended granting the petition. After review of the matter at its meeting of March 30, 1995, the Disciplinary Board determined that further hearing was necessary on the issue of whether petitioner was engaged in the practice of law. Consequently, the matter was remanded and an additional hearing was held on May 15, 1995 before Hearing Committee [ ]. The committee filed its report on July 5, 1995, finding that petitioner is not presently practicing law and reaffirming its recommendation that the petition for reinstatement be granted.

This matter was adjudicated at the meeting of the Disciplinary Board held on August 17, 1995.

## FINDINGS OF FACT

The board makes the following findings of fact.

(1) Petitioner, [ ], was born on September 12, 1948. He graduated from the University of [ ] in 1970 and [ ] Law School in 1974. Petitioner was admitted to practice before the Supreme Court of Pennsylvania on October 4, 1974. (N.T. I, 11.)

(2) Petitioner was employed by [A], Esquire, from March 1971 until March 1978. In 1978, he formed

a partnership with [B] and practiced in the law firm of [C]. (Petition for reinstatement.)

(3) Petitioner's practice focussed on no-fault divorces. Petitioner and his partner advertised their services in approximately 100 daily newspapers and an equal number of weeklies. (N.T. I, 27.) Petitioner's office received several hundred inquiries per week in response to these advertisements. (N.T. I, 24.)

(4) Petitioner became responsible for hundreds of divorce cases as a result of this high volume practice. The cases were filed initially in [    ] County and later predominantly in [    ] County due to the inexpensive filing fees. (N.T. I, 24, 44.)

(5) Petitioner attempted to handle this increasing caseload with a minimal staff of non-legal personnel. (N.T. I, 27.)

(6) Petitioner has an extensive disciplinary record consisting of three suspensions and approximately 23 informal admonitions. (Petition for reinstatement.)

(7) A six-month suspension was imposed on May 21, 1984. Petitioner was found to have violated D.R. 6-101(A)(3) in eight separate instances. In each instance, petitioner unsuccessfully attempted to serve a divorce complaint upon a client's spouse and requested an additional fee from his client to perform a search. Petitioner, however, took no further action after receiving the additional fee. (Petition for reinstatement.)

(8) A one-year suspension to run consecutive to the six-month suspension was imposed on September 7, 1984. This matter involved three charges wherein petitioner submitted a false affidavit of consent to the court for the purpose of inducing the court to enter a final decree. The dates on the affidavits had been altered. In one instance, petitioner was called to testify

before a judge regarding the alterations, and petitioner was not truthful concerning the origin of the changes. (Petition for reinstatement.)

(9) A six-month suspension to run consecutive to the six-month and one-year suspensions was imposed on February 28, 1985. Petitioner was found to have violated D.R. 2-101(A) relating to fraudulent or misleading advertising. Petitioner used a pattern of advertising designed to create the immediate and false impression that several different, unassociated attorneys were competing for no-fault divorce business. This caused members of the public to wrongly believe from the advertisements that different levels or qualities of service for divorce work were available. (Petition for reinstatement.)

(10) Petitioner was disbarred in 1992 retroactive to May 1986. The disbarment was imposed in response to petitioner's grossly inept handling of his cases, his knowing and intentional acceptance of a volume of cases far beyond his capacity to handle them, and his lack of familiarity with the rules of conduct for lawyers. Specific instances of misconduct by petitioner included advising clients to engage in fraudulent conduct and commingling refunds of court costs advanced by seven clients. (Petition for reinstatement.) (N.T. I, 10.)

(11) Since petitioner's disbarment, he has worked as an office manager for attorneys and, since 1989, has been employed as a paralegal for [A], Esquire. Petitioner first worked for [A] subsequent to law school. (N.T. I, 14, 15.)

(12) Before petitioner joined the firm as a paralegal, [A's] practice was primarily geared to commercial matters. Currently, [A's] firm devotes itself to no-fault divorce matters. (N.T. II, 72, 74, 92.)

(13) Petitioner's duties as a paralegal include opening the mail and disbursing it accordingly, maintaining ledgers indicating when payments are received, handling banking and providing a daily accounting to [A]. Petitioner reviews all pleadings prepared by secretarial staff and meets daily with [A] to review these pleadings for [A's] signature. Petitioner is responsible for placement and supervision of all advertisements in print publication. Petitioner screens client phone calls. Petitioner testified he does not answer inquiries relating to substantive legal issues. (N.T. II, 35-40.)

(14) Petitioner testified he is paid a salary unrelated to the volume of [A's] practice. (N.T. II, 33.)

(15) Petitioner does not hold himself out as an attorney, does not appear on any professional letterhead, and identifies himself professionally as a manager. (N.T. II, 33-34.)

(16) Petitioner advises all clients that he is a paralegal and cannot dispense legal advice. (N.T. II, 34.)

(17) Attorney [A] testified that he hired petitioner as a paralegal to aid him in expanding into a no-fault divorce practice. At all times, [A] was aware that petitioner was disbarred. (N.T. II, 71-72.)

(18) [A] testified that he is not a figurehead for petitioner's practice, the practice is his, and he owns all of the equipment. Everything that goes out of the office has [A's] name on it. (N.T. II, 77-78.)

(19) [A] testified that when petitioner began his employment as a paralegal, he told him that the problems petitioner experienced prior to disbarment were not going to happen in [A's] practice and cases needed to be closely followed and maintained. (N.T. II, 82-83.)

(20) [A] explained that the office procedures are reviewed on a continuing basis and contemplated that

should petitioner become a lawyer with the firm, there would not be the type of problems occurring that existed with petitioner's prior practice. (N.T. II, 83.)

(21) [A] testified that his office averages 70 cases per week. (N.T. II, 79.)

(22) Since disbarment, petitioner's activities have not constituted the unauthorized practice of law.

(23) Any monies that were payable to clients by petitioner were reimbursed on September 16, 1986. (Petition for reinstatement.)

(24) Petitioner has one minor son for whom he pays support. Petitioner testified that he works hard to maintain involvement in his son's life by participating in different activities with his son. (N.T. I, 13.)

(25) Petitioner reviews the [    ] *Legal Journal, Pennsylvania Bulletin, Pennsylvania Judicial Reporter,* and the *Commercial Law Journal,* as well as case reporters he uses through his employment. (Petition for reinstatement.)

(26) Petitioner attended a three day PBI seminar in January 1993 wherein a variety of subject areas were covered. Petitioner testified he attended an ethics seminar subsequent to the 1993 seminar. (N.T. I, 41.)

(27) Petitioner rented videos from PBI and viewed various legal subject areas. (Petition for reinstatement.)

(28) Petitioner does not feel any rancor towards the system, because what happened to him was his fault. (N.T. I, 31.)

(29) Petitioner presented several character witnesses on his behalf. [D], Esquire, testified that she has known petitioner since law school. She feels he is competent, honest and prompt and his reinstatement would not be detrimental to the integrity of the bar. (N.T. I, 49-51.)

(30) [E] has overseen the arbitration system in [    ] County for 34 years. [E] never heard anything negative about petitioner's moral character, legal competency or honesty. [E] believes petitioner would be an asset to the bar and the people of [    ] County. (N.T. I, 56.)

(31) [F], prothonotary of [    ] County, testified that he knows petitioner as a paralegal. [F] related that petitioner has always been honest with him, and he never has a problem with him. (N.T. I, 70.)

(32) [G], Esquire, testified that petitioner is very professional, knowledgeable and fair. He testified that petitioner's reinstatement would not be detrimental to the bar, and he would not hesitate to refer a simple divorce case to petitioner. (N.T. I, 81-84.)

(33) Seventeen attorneys from the [    ] area wrote letters to the Hearing Committee on behalf of petitioner stating that petitioner possesses good character and should be permitted to practice law again. (Petitioner's exhibit B.)

(34) Office of Disciplinary Counsel did not offer any evidence in opposition to the reinstatement.

## II. CONCLUSIONS OF LAW

The misconduct for which petitioner was disbarred is not so egregious as to preclude immediate consideration of his petition for reinstatement.

Petitioner has demonstrated, with clear and convincing evidence, that he possesses the moral qualifications, competency and learning in the law necessary to practice law in the Commonwealth of Pennsylvania.

Petitioner's resumption of the practice of law will not be detrimental to the integrity of the bar nor subversive of the interests of the public.

## III. DISCUSSION

The sole issue before the Disciplinary Board is whether petitioner's request for readmission to the Pennsylvania Bar should be granted. Petitioner seeks reinstatement from three suspensions and a disbarment. Petitioner's initial suspension occurred as a result of his neglect of eight different cases, including failure to take action on files and failure to communicate with clients. His second suspension resulted from his having altered dates of affidavits of consent. His third suspension resulted from his shoddy advertising schemes, which were used to generate as much business as possible, even though petitioner and his partner did not have the means to handle such a volume of work. In order to be reinstated from a suspension, a petitioner must meet his burden of demonstrating by clear and convincing evidence that he/she possesses the moral competency and learning in the law required for admission to practice law in this Commonwealth and that the resumption of the practice of law within Pennsylvania by such person will be neither detrimental to the integrity and standing of the bar or administration of justice nor subversive of the public interest. Pa.R.D.E. 218(b)(3)(i). Since petitioner seeks reinstatement from a disbarment as well, he bears an additional burden.

In *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986), the Supreme Court explained the qualitative difference between suspension and disbarment as one in the nature of entitlement. In the case of suspension, the privilege to practice is withdrawn for a specific time. After that period expires, the attorney can resume practice upon demonstrating fitness pursuant to Pa.R.D.E. 218(b)(3)(i). In the case of disbarment, however, the withdrawal from practice is not quantified

and there is no basis for any expectation that the privilege to resume practice will be restored at a predetermined point in time. In order to underscore the important distinctions between the two sanctions, the Supreme Court devised a threshold inquiry that must be met by those petitioners seeking reinstatement from disbarment cases. This inquiry, which must be met before any consideration of Rule 218 is undertaken, clearly increases the burden on petitioner.

As the court articulated in *Keller,* the critical question is whether the magnitude of the breach of trust would permit the resumption of practice without a detrimental effect upon the integrity and standing of the bar or the administration of justice nor be subversive of the public interest. Initially, the board must determine whether the original misconduct was so patently offensive as to preclude readmission. Such an inquiry demands an analysis of whether a sufficient length of time has evolved since the acts of misconduct occurred and during which the petitioner has engaged in a qualitative period of rehabilitation. If petitioner's misconduct does not prevent consideration of his current request for reinstatement, the board must then consider whether petitioner possesses the moral qualifications and learning in the law necessary to merit readmission to the Pennsylvania Bar, pursuant to Rule 218(c)(3)(i), Pa.R.D.E.

In order to determine whether the misconduct that led to disbarment is so egregious as to preclude reinstatement, the board must review the underlying offenses. Here, petitioner's disbarment occurred as a result of his misconduct relative to two clients. In the first instance, petitioner was found to have created false evidence involving an affidavit that falsely stated the county of residence of his client. Petitioner was found

to have counseled and advised his client to engage in conduct he knew to be fraudulent and illegal. With respect to the second client, petitioner was found to have neglected a legal matter entrusted to him and to have counseled his client to engage in fraudulent conduct. Petitioner was also found to have commingled refunds from entrusted master's fees. Petitioner's extensive disciplinary record was given due consideration and was an aggravating factor leading to his disbarment. The board notes that the instances of misconduct that led to petitioner's disbarment, standing alone, were not extremely serious matters. However, the cumulative effect of petitioner's prior disciplinary record consisting of very similar transgressions transformed those incidents into a matter of grave concern.

It is evident from a review of other cases discussing the *Keller* issue, that petitioner's conduct is neither so egregious a breach of trust nor so repugnant to the integrity of the bar or the public interest as to obviate his possible reinstatement. In the case of *In re Anonymous No. 67 D.B. 81,* 13 D.&C.4th 652 (1991), an attorney was reinstated after disbarment for mismanagement, commingling and conversion of client funds, failing to maintain adequate escrow records and failing to notify clients of receipt of their funds. An attorney was reinstated after disbarment relative to neglecting matters entrusted to him for an extended period of time and lying or misrepresenting material facts to clients concerning their cases. *In re Anonymous Nos. 4 and 35 D.B. 79,* 5 D.&C.4th 557 (1989). An attorney was reinstated after disbarment on consent pending allegations of misuse of client funds and neglect. *In re Anonymous No. 24 D.B. 84,* 14 D.&C.4th 235 (1991). A lawyer was reinstated after being disbarred for mis-

using and misappropriating client funds and failing to account for disposition of these funds when requested to do so. *In re Anonymous No. 36 D.B. 83,* 14 D.&C.4th 359 (1991). An attorney was reinstated after disbarment for neglectful handling of a stockholder claim and a real estate transaction. *In re Anonymous No. 65 D.B. 84,* 13 D.&C.4th 249 (1991). These reinstatement cases demonstrate that the misconduct involved therein is comparable to petitioner's misconduct and, therefore, the breach of trust occasioned by the conduct which led to the discipline is not so egregious as to warrant denial of the reinstatement petition.

Having determined that petitioner's misconduct was not so egregious as to permanently prevent his reinstatement, the next question is whether an adequate period during which petitioner has engaged in qualitative rehabilitation has elapsed since his first suspension in 1984 and subsequent disbarment in 1986, so as to make his readmission request timely. *Office of Disciplinary Counsel v. Keller, supra.* Petitioner has been removed from the practice of law for approximately 11 years. During this time, he has worked as an office manager and a paralegal. Since 1989, he has worked exclusively for [A], Esquire, as a paralegal, when [A] decided to concentrate on simple, no-fault divorce work and hired petitioner to assist him. Due to [A's] sudden interest in no-fault divorce work after years of handling commercial law matters, a legitimate concern arose that petitioner was actually engaged in the practice of law while disbarred under the guise of doing paralegal work for [A]. Upon receipt of Hearing Committee[ 's] first report filed on March 7, 1995, the board determined to remand the matter for further probing of this critical

issue. The committee held an additional hearing and found that petitioner was not engaged in the practice of law. The Hearing Committee expressed its concerns that the practice in which petitioner plans to engage if he is reinstated closely resembles that of petitioner before he was suspended and disbarred. If reinstated, petitioner would practice no-fault divorce law with [A], an attorney who had virtually no domestic practice prior to hiring petitioner as a paralegal. [A] now uses petitioner's system of filing cases in [    ] County where the prothonotary of [    ] County testified that, of the 6,000 divorce cases pending, approximately 3,000 are [A's] cases. It appears evident that [A] borrowed the idea to file in [    ] County from petitioner. [A] told the Hearing Committee that because of the computer system his office utilizes, he did not plan to put a cap on the number of cases he and petitioner could handle, although he previously told the committee that he did not foresee a drastic change in the number of cases handled by his office. [A] further testified that he has an unknown number of open cases and an unknown number of open files in various stages of activity. [A] described his practice as a high volume, simple no-fault divorce practice requiring little lawyering. The Hearing Committee was troubled by the potential for abuse inherent to a firm admittedly specializing in "little lawyering." To safeguard the public and to assuage any doubts relative to petitioner's likely return to the same type of practice for which he had been disbarred, the committee proposed that a practice monitor be appointed.

While the board appreciates the concerns of the Hearing Committee, imposition of a practice monitor is not

an option in a reinstatement case. A practice monitor is appropriate to ensure that an attorney develops an adequate understanding of the practice of law as a profession and a business. *Office of Disciplinary Counsel v. Geisler,* 532 Pa. 56, 614 A.2d 1134 (1992). Assignment of a practice monitor is a reflection that an attorney lacks an understanding of how to run a practice. Were the board to recommend reinstating a disbarred or suspended attorney with the added condition of a practice monitor, the meaning behind the reinstatement would be negated, since in order to be reinstated, a petitioner must prove competency and learning in the law pursuant to Rule 218, Pa.R.D.E. Nor can the board restrict the type of law which petitioner can practice upon reinstatement. There is no authority that allows the creation of a dual license or a partial license to practice law. *In re Anonymous No. 61 D.B. 92,* 19 D.&C.4th 494 (1993). Upon reinstatement, petitioner may practice whatever type of law he chooses.

The board's rejection of the Hearing Committee's suggestion should not imply that the board does not share the same concerns. To the contrary, the board is well aware of the problems inherent in this case. However, as the record stands, there is no reason not to grant the petition. The board's review of the record indicates that petitioner's responses to questions concerning his daily activities were adequate to convey the impression that he stayed within the perimeters of his assignments as a paralegal. [A's] testimony, as well, did not suggest that petitioner was engaging in the practice of law. The board is bound by the four corners of the record created at the Hearing Committee level and, since the record does not reveal any untoward activity by petitioner, the board is constrained to find

that petitioner has not engaged in the practice of law while employed as a paralegal at [A's] firm. The board cannot deny the petition merely because there is a *possibility* that petitioner may return to his prior habits. This potential exists for every attorney who applies for reinstatement. If a petitioner meets his burden of proof, the board must recommend reinstatement.

Petitioner appears to have spent his years of disbarment and suspension working productively. Petitioner spends free time with his son and is a co-captain of a softball team in the [    ] league. Petitioner has admitted his wrongdoing and believes he has learned from his experience. *Matter of Costigan,* 541 Pa. 459, 664 A.2d 518 (1995). He testified that he feels rehabilitated and is disdainful of the person he was prior to his disbarment. Petitioner stated that what happened before will not recur, as he prefers to be in control of his circumstances. Based on this evidence, the board determines that the 11-year period of suspension and disbarment have been meaningful, and we conclude that his present reinstatement would not pose a threat to the integrity of the bar or the interest of the public.

The board must next determine whether petitioner possesses the moral character necessary to resume practice. Petitioner presented character testimony from two [    ] area attorneys, the prothonotary of [    ] County, and the head of the [    ] County arbitration system. While these witnesses were not overly effusive in their praise of petitioner, the testimony presented indicates that petitioner is considered to be competent, honest, fair and knowledgeable. In addition to these witnesses, 17 [    ] attorneys sent letters on behalf of petitioner indicating that they had no qualms concerning peti-

tioner's reinstatement, and they believed his petition should be granted. No family members or close friends testified on petitioner's behalf. Based on the record before the board, petitioner possesses the appropriate moral attributes required to be a member of the Pennsylvania Bar.

In satisfaction of the moral standards mandatory for reinstatement, petitioner must possess learning in the law. Petitioner presented evidence that during the time frame of his disbarment, he apprised himself of the law by doing research for his employer, reviewing the [   ] *Legal Journal, Pennsylvania Bulletin, Pennsylvania Judicial Reporter,* and *Commercial Law Journal.* Petitioner attended seminars sponsored by PBI and reviewed videotapes rented from PBI. Petitioner appears to have maintained the requisite learning in the law.

## IV. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that petitioner, [     ], be reinstated to the practice of law.

The board further recommends that, pursuant to Rule 218(e), Pa.R.D.E., petitioner be directed to pay the necessary expenses incurred in the investigation and processing of the petition for reinstatement.

Board Members Powell, Witherel, Kerns, Marroletti and Miller dissented.

Board Members Leonard and Carson did not participate in the August 17, 1995 adjudication.

## ORDER

And now, January 31, 1996, upon consideration of the report and recommendations of the Disciplinary Board of the Supreme Court of Pennsylvania dated

December 11, 1995, the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.

Mr. Justice Zappala did not participate in this matter.