**In re Anonymous No. 126 D.B. 92**

Disciplinary Board Docket no. 126 D.B. 92.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

SLOANE, *Member,* July 17, 1995—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its amended findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On December 23, 1992 the Office of Disciplinary Counsel filed the petition for discipline in this matter with the secretary of the Disciplinary Board.

On March 2, 1993 the matter was referred to Hearing Committee [     ], consisting of [     ], Esquire, Chairperson, and [     ], Esquire and [     ], Esquire, members.

A pre-hearing conference was held on April 20, 1993, at which the respondent was not present.

On June 17, 1993 a disciplinary hearing was held.

The Hearing Committee filed its report on September 2, 1993, recommending an 18 month suspension. Neither party filed exceptions to this report.

On October 15, 1993 the Disciplinary Board adjudicated the matter and ordered that it be remanded to the Hearing Committee for additional findings on whether the misrepresentations made by the respondent were intentional or neglectful.

The Hearing Committee held an additional disciplinary hearing on December 14, 1993. The committee filed a supplemental report on February 14, 1994. The Hearing Committee again recommended an 18 month suspension. Neither party filed exceptions to the supplemental report.

The matter was adjudicated at the April 7, 1994 meeting of the Disciplinary Board.

On September 19, 1994 the Office of Disciplinary Counsel filed a notice of reciprocal discipline with the Supreme Court based on an order of the Supreme Court of [    ] dated July 6, 1994.

On September 20, 1994 the report and recommendation of the Disciplinary Board in this matter was filed with the Supreme Court.

On October 14, 1994 the Supreme Court, by notice and order, issued a rule to show cause why reciprocal discipline in the form of a three month suspension should not be imposed.

By order dated October 25, 1994, the Supreme Court referred the instant matter to the Disciplinary Board for reconsideration in light of respondent's suspension by the Supreme Court of [    ].

The matter was considered at the December 16, 1994 meeting of the Disciplinary Board, and an order was entered on December 21, 1994 directing the parties to submit briefs on the appropriate discipline to impose.

Petitioner filed a brief on January 9, 1995. Respondent filed no brief within the prescribed time.

The matter was adjudicated at the February 24, 1995 meeting of the Disciplinary Board.

## II. FINDINGS OF FACT

(1) Office of Disciplinary Counsel, petitioner, whose principal office is now located at Suite 400, Union Trust Building, 501 Grant Street, Pittsburgh, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement with the power to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the aforesaid rules.

(2) [    ], respondent, is an out-of-state attorney who was admitted to practice law in the Commonwealth of Pennsylvania in 1982. He currently maintains an office for the practice of law at [    ].

(3) [A], complainant, terminated a representation concerning an estate administration undertaken by respondent in June 1991, and requested the return of the file. (N.T. I, 33-34.)

(4) The file was not returned. (N.T. I, 27.)

(5) Complainant made numerous phone calls to respondent's office during 1992, which respondent failed to return. (N.T. I, 34, 35.)

(6) As a result of this failure, complainant filed a complaint which led to a determination that respondent receive an informal admonition from Chief Disciplinary Counsel, upon the condition that the file be returned

to complainant no later than 10 days prior to the informal admonition. (N.T. I, 31.)

(7) Respondent failed to return the file in accordance with the condition. (N.T. I, 31.)

(8) The night before the informal admonition, respondent prepared the file in order to forward it to complainant by Federal Express. (N.T. I, 20-21, 51.) The package was left on the desk he shared with [B], an employee with [C], with a note to [B], to send the packet by Federal Express. (N.T. I, 29, 42.)

(9) At the informal admonition on July 14, 1992 respondent told Chief Disciplinary Counsel that the file would be sent that morning, although respondent did not know whether or not the package had or would be so sent. (N.T. I, 18-19, 23.)

(10) Respondent traveled directly from the informal admonition to Nevada in order to lecture there, without checking whether the package was sent. (N.T. I, 21, N.T. II, 41.)

(11) In November 1992 petitioner notified respondent that it was initiating further disciplinary proceedings against him because the file was never sent to the complainant. (N.T. I, 19.)

(12) Respondent found the file two weeks before the disciplinary hearing among tax materials from the company with which he was sharing an office at the time of the informal admonition. (N.T. I, 18, 22, 41.)

(13) Respondent brought the client file in question to the disciplinary hearing on June 17, 1993. (N.T. I, 18.)

(14) At the time of accepting the representation in June 1991, respondent had only had his own office

for the practice of law for approximately six months. (N.T. I, 72.) Respondent's area of expertise is planning employee benefits and asset protection, using skills from law and accounting. (N.T. I, 74, 85-86.)

(15) Since starting his own practice, respondent has never employed any sort of support staff, nor has he been associated with other attorneys in the practice of law. (N.T. I, 34, 62.)

(16) Respondent no longer accepts representations involving estate administration. (N.T. I, 21.)

(17) Respondent's major source of income is as a lecturer for continuing education in accounting. (N.T. I, 74, 78.)

(18) Respondent has limited his practice to a small number of clients. (N.T. II, 44.)

(19) Respondent makes certain that his current clients have his phone number at all times. He maintains an electronic mail address for clients with computers. Respondent also subscribes to MCI mail service for memos and letters. (N.T. II, 44-45.)

(20) By order of the Supreme Court of [    ] filed July 7, 1994, respondent was suspended for three months for failure to act with reasonable diligence, in violation of R.P.C. 1.3, failure to comply with a client's reasonable request for information about the status of a matter, in violation of R.P.C. 1.4(a), and failure to cooperate fully with the ethics authorities, in violation of R.P.C. 8.1(b).

(21) By order of the Supreme Court of Pennsylvania dated December 28, 1994, respondent was suspended from the practice of law in this Commonwealth pursuant to Rule 216, Pa.R.D.E.

## III. CONCLUSIONS OF LAW

Respondent violated R.P.C. 1.16(d) by failing to provide his client with the file concerning the administration of the estate when requested to do so following his termination.

Respondent violated R.P.C. 8.4(c) by negligently misrepresenting to Disciplinary Counsel at the informal admonition that the client file due complainant was or would be sent by Federal Express that morning.

By this same negligent misrepresentation, respondent also violated 8.1(a) because the transmittal of the file was a material fact (due to the attached condition) in a disciplinary proceeding.

## IV. DISCUSSION

The disciplinary proceedings in this matter grew out of a representation undertaken by respondent shortly after beginning a solo practice. The representation involved the administration of an estate in Pennsylvania. After being retained to represent the administrator, respondent apparently undertook some of the necessary work. (N.T. I, 63.) The client terminated respondent's representation and requested that the file be returned to the client.

The charge against respondent involves three separate issues, two of which are not in doubt. Respondent freely admits that the client file which underlies the whole complaint was not provided in a timely manner. (N.T. I, 45, 47, 58.) This admission establishes a violation of R.P.C. 1.16(d). Respondent also freely admits that he did not comply with the conditions of the informal admonition. (N.T. I, 93.) The only issue remaining is

whether the noncompliance was willful, and therefore involved intentional deceit of the disciplinary system. See petition for discipline at 4-5. This issue respondent disputes vigorously. (N.T. I, 19, 93.)

When respondent appeared for the informal admonition, he informed Chief Disciplinary Counsel that he had prepared the client file for shipping by Federal Express and had made arrangements for the package to go out that same morning. (N.T. I, 19.) Respondent gave Chief Disciplinary Counsel the sender's receipt from the airbill. (N.T. I, 23.) The file was never sent Federal Express, or by any other means.

Instead, respondent claimed to have found the file two weeks before the disciplinary hearing, among the tax and financial records of a defunct company, [C], respondent shared office space with at the time of the informal admonition. (N.T. I, 22.) Thus, respondent implied, the file was accidently intermingled by a [C] employee with that company's records.

The Hearing Committee and petitioner focused their attention on a number of side issues which they felt bore on credibility. Among these were the lack of transmittal letters (N.T. I, 52, 62), the wrong date on the Federal Express airbill (N.T. I, 39), the fact that credit card was checked as the payment option, but no number was entered on the appropriate blank (N.T. I, 39-40), and most troubling to the Hearing Committee, the date on the fee agreement letter was the same as the date of the original disciplinary hearing, not two years before it. (Hearing Committee report at 8-9.)

For the supplementary hearing, petitioner chose to call respondent's office mate at the time of the informal

admonition, [B]. [B] was the only full-time employee of [C], the defunct company in question, and the person to whom respondent wrote a note directing the shipment of the client file. (N.T. I, 29.) Instead of giving definitive answers to the questions which respondent's story raised, [B's] testimony was equivocal.

Petitioner and the Hearing Committee stressed that [B] did not corroborate in any major detail respondent's story. See supplemental report, generally. (N.T. II, 53.) In particular, [B] did not remember the client file being left for him to Federal Express (N.T. II, 10-11), and the name of the file meant nothing to him. (N.T. II, 13.)

Nevertheless, his testimony did not refute respondent's version of the events. [B] testified that respondent did leave things for him to ship by Federal Express. (N.T. II, 10, 14.) [B] also stated that he remembered that respondent was searching for a file, but he was uncertain as to when. (N.T. II, 13.) Even more in favor of respondent's version of the events is [B's] testimony that other employees of [C] did arrive earlier than [B], and could have moved the envelope before he would have a chance to see it. (N.T. II, 19-20.)

Similarly, when the office was closed in November 1992, [B] personally cleaned out the office and put everything into boxes, including any items which might belong to respondent, without going through the material at all. (N.T. II, 15-16.) These boxes were delivered to respondent for the purpose of handling a tax dispute with the Pennsylvania Department of Revenue. (N.T. II, 22.)

The evidence before the board establishes one violation of R.P.C. 1.16(d), in the admitted failure to return

the file, even after the informal admonition. This evidence is also sufficient to find a violation of R.P.C. 8.1(a), because the statement made to Chief Disciplinary Counsel in the informal admonition setting was materially false—the file was never sent. In addition, the board finds respondent violated R.P.C. 8.4(c) in that respondent's statement to Chief Disciplinary Counsel was a negligent misrepresentation.

Rule 8.4(c) does not attach an independent state of mind requirement, stating only that, "[i]t is professional misconduct for a lawyer to: (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation." (R.P.C. 8.4(c).) While some of the terms include in their legal connotations a separate mental state, *e.g.,* fraud, misrepresentation does not. Misrepresentation is defined in part as follows in a leading legal dictionary:

"Any manifestation by words or other conduct by one person to another that, under the circumstances, amounts to an assertion not in accordance with the facts. An untrue statement of fact. An incorrect or false representation." (Black's Law Dictionary (5th ed. 1979, 903).)

As respondent's statement at the informal admonition was an assertion not in accordance with the facts, a violation of R.P.C. 8.4(c) is established.

Nevertheless, the requirement that violations of professional duty must be shown by evidence which is clear and convincing precludes the finding of any other violations. *Cf. Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 580, 506 A.2d 872, 875 (1986). As the respondent himself acknowledged, the record in this matter is replete with examples of poor judgment. But

the evidence is not clear enough to establish that respondent actually lied to Chief Disciplinary Counsel. Indeed, the only witness besides respondent, [B], gave testimony which could easily support either side, and the respondent maintained his position in the face of considerable cross-examination over two hearings and seven months.

Therefore we find that petitioner did not sustain its burden with regard to violations of R.P.C. 3.3(a), 3.3(c), 8.1(a), or 8.1(d), or Pa.R.D.E. 203(b)(3) or 204(b).

Having established a violation, the board now considers the appropriate type of discipline to be imposed. As the violation continued despite the involvement of Disciplinary Counsel, the board believes public discipline to be appropriate. Public discipline will also serve to underscore the importance with which the legal system views the responsibilities which respondent neglected. Even accepting respondent's version of events, respondent took far too long to attempt transmittal of the file in the first place, before its disappearance, once Disciplinary Counsel contacted him. Also, allowing client files, the subject of great concern in our confidentiality rules, to become casually commingled with the property of an unrelated company, is carelessness incompatible with the high standards of the profession.

Nevertheless, the board also finds significant mitigating factors to be present. First and foremost, the respondent clearly recognized the problem as one requiring him to implement a solution, and he has made a sincere attempt to do so. He takes only a small number of clients. (N.T. II, 44.) He makes certain each client has several means of communicating with him. (N.T.

II, 44-45.) He has thus removed one of the factors most responsible for the original client misunderstanding.

The board also recognizes that the violations occurred at a time of great personal trauma for the respondent (N.T. I, 78, 83) and should be taken into account, see *In re Anonymous No. 111 D.B. 89*, 9 D.&C.4th 526, 536 (1990). In addition, at the time of respondent's accepting the representation, he had only been in practice for himself about six months. (N.T. I, 72.) Thus, experience in law office management is a factor to be considered. See *Office of Disciplinary Counsel v. Geisler*, 532 Pa. 56, 60, 614 A.2d 1134, 1136 (1992) and *In re Anonymous No. 58 D.B. 89*, 10 D.&C.4th 545, 553 (1990).

Finally, there was no showing by petitioner that this respondent represented any danger to the public. No showing was even made that the clients in this case were prejudiced by the respondent's inaction.

Against these factors must be balanced the evidence of the violations which were the subject of a disciplinary proceeding in [    ]. The addition to the record of the decision and recommendation of the Disciplinary Review Board of the Supreme Court of [    ] changes somewhat the complexion of this case. (See generally, decision and recommendation of the Disciplinary Review Board, dated May 20, 1994; [    ] Report.) First, and most significantly, this addition shows that the incidents before this body were not an isolated instance in an otherwise unblemished career.

When we originally wrote our opinion in this matter, there was some question as to whether respondent's

conduct was simply a total mix-up in paperwork, in which case we were inclined to resolve these issues with the benefit of the doubt going to respondent. However, having now been advised that respondent is under a three-month suspension in [    ], and also now suspended in Pennsylvania, based on reciprocal discipline, this has caused us to more closely scrutinize the character of respondent.

The decision and recommendation of the Disciplinary Review Board in [    ] states:

"Upon a de novo review of the record, the board is satisfied that the DEC's conclusion that respondent acted unethically is fully supported by the record.

"In failing to complete the matter promptly, particularly after his assurances to the DEC secretary, respondent violated R.P.C. 1.4(a).

"More seriously, however, respondent ignored his obligation to keep the DEC informed of his whereabouts, with the knowledge that there was a pending grievance against him that required his cooperation in its investigative phase. By breaching his duty to make himself accessible to DEC members—unpaid volunteers who dedicate countless hours and considerable effort to the disciplinary system—respondent hindered the investigation of the grievance, did not answer the formal complaint and did not appear at the DEC hearing. The board reached the unavoidable conclusion that respondent's failure to keep the DEC apprised of his office or home address was knowing and deliberate. The cavalierism that respondent exhibited toward the disciplinary authorities should not be tolerated. When an attorney shows disrespect to an ethics committee, the attorney

also shows disrespect to the Supreme Court, of which the committee is an arm. *In re Grinchis,* 75 [    ] 495, 496 (1978).

"In view of the foregoing, the board unanimously recommends that respondent receive a three-month suspension. See *In re Beck,* 127 [    ] 391 (1992). The board's recommendation is largely grounded on respondent's extreme indifference to the ethics system and particularly to the volunteers who unselfishly devote their time and attention to fulfill the obligations with which they are charged by the court. Two members agreed with the measure of discipline, but did not find clear and convincing evidence that respondent received actual notice of the DEC hearing. One member did not participate.

"The board further recommends that the respondent be required to reimburse the ethics financial committee for administrative costs."

In comparing the underlying cases in [    ] and Pennsylvania, there are a number of similarities between the two cases. First, as in the present case, respondent was retained to wind up the affairs of a deceased person by a member of the family. ([    ] Report 1-2.) More significantly, respondent was found to have failed to respond to reasonable requests by the client for information regarding the representation. ([    ] Report 8.) This violation was found in part because of respondent's failure to respond to letters from his client in which the client expressed a desire to terminate the representation and requested the return of all information in respondent's possession. ([    ] Report 2.)

Even more importantly, the [    ] Disciplinary Review Board found that respondent failed to cooperate with

the district ethics committee which investigated the grievance against him. ([     ] Report 8.). The recommendation of a suspension of three months was largely grounded on the [     ] Disciplinary Review Board's determination that respondent's failure to keep the investigating committee informed of his home and office addresses when respondent was aware of continuing proceedings against him was knowing and deliberate. ([     ] Report 9.)

This kind of evidence warrants consideration, and the board determines that public discipline is fully appropriate to underscore the importance of the office of attorney, and the significance of the disciplinary system, in light of the evidence before the board and the record of the disciplinary proceeding in [     ]. Compare *Office of Disciplinary Counsel v. Duffield,* 537 Pa. 485, 499, 644 A.2d 1186, 1192-93 (1994).

In light of these factors, the board believes that suspension is the most appropriate discipline for imposition.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends to your honorable court that respondent, [     ], be suspended for a period of six months, retroactive to December 28, 1994, the date reciprocal suspension was imposed by your honorable court.

It is further recommended that the court, direct that respondent pay all of the necessary expenses incurred in the investigation and processing of this matter pursuant to Rule 208(g) of the Pennsylvania Rules of Disciplinary Enforcement.

Messrs. Friedman, Paris and Saltz dissented and would recommend the imposition of a public censure.

Mr. Kerns and Dean Carson did not participate in the adjudication.

### ORDER

And now August 16, 1995, upon consideration of the amended report and recommendations of the Disciplinary Board dated July 17, 1995, it is hereby ordered that [respondent], be and he is suspended from the bar of this Commonwealth for a period of 6 months, retroactive to December 28, 1994, the date reciprocal suspension was imposed, and he shall comply with all the provisions of Rule 217, Pa.R.D.E.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Justice Montemuro is sitting by designation.