

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-1-2003

# Ofc Disciplinary v. Surrick

Precedential or Non-Precedential: Precedential

Docket No. 01-2783P

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Ofc Disciplinary v. Surrick" (2003). *2003 Decisions.* Paper 297.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/297

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed August 1, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 01-2783

_____

IN RE:
ROBERT B. SURRICK,

Appellant

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 00-mc-00086)
District Judge: Honorable James T. Giles

_____

Argued December 18, 2002

Before: ROTH, FUENTES and COWEN, *Circuit Judges*

(Opinion filed: August 1, 2003)

Howard J. Bashman[1] (Argued)
Buchanan Ingersoll
1835 Market Street
Eleven Penn Center, 14th Floor
Philadelphia, PA 19103

*Counsel for Amicus Curiae*

_____

1. The Court appreciates the fine service performed by Howard J. Bashman, Esq., at the Court's request, in presenting the brief for Amicus Curiae in support of affirmance.

Samuel E. Klein, Esquire
Jeffrey G. Weil, Esquire (Argued)
Brian Hirsch, Esquire
Dechert, Price & Rhoads
1717 Arch Street
4000 Bell Atlantic Tower
Philadelphia, PA 19103

*Counsel for Appellant*

## OPINION OF THE COURT

ROTH, *Circuit Judge:*

This appeal arises out of reciprocal attorney disciplinary proceedings in the United States District Court for the Eastern District of Pennsylvania. The Pennsylvania Supreme Court had suspended appellant Robert Surrick from the practice of law for a period of five years after it concluded that he had violated a provision of the Rules of Professional Conduct by falsely accusing two lower court judges of "fixing" cases. Following an independent review of the state disciplinary proceedings, the *en banc* District Court held that reciprocal discipline was warranted but limited the term of Surrick's suspension to thirty months, or half that imposed by the state court. On appeal, Surrick argues that the imposition of reciprocal discipline was inappropriate because the state proceedings upon which the District Court relied violated his rights of due process and free speech. Because we conclude that the District Court did not abuse its discretion in electing to suspend Surrick for a period of thirty months, we will affirm the judgment of the District Court.

## I. Factual Background and Procedural History

The facts relevant to Surrick's underlying state court suspension are drawn from the opinion of the Pennsylvania Supreme Court and the Report and Recommendation issued by the initial District Court panel. *See Office of Disciplinary Counsel v. Surrick*, 749 A.2d 441, 442-443 (Pa. 2000) (*Surrick I*); *In re Surrick*, No. MISC. 00-086, 2001 WL

120078 (E.D. Pa. Feb. 7, 2001) (*Surrick II*). Surrick and his wife were defendants in *Leedom v. Spano*, Case No. 89-12977 in the Court of Common Pleas of Delaware County, a case which involved the foreclosure of a mortgage for which they were sureties. By stipulation of the parties, the issue of liability was submitted to the court. Judge Harry J. Bradley entered judgment against Surrick and his wife in July 1992.

On appeal to the Superior Court, Surrick entered an appearance as co-counsel and, in August 1992, filed a motion for the recusal of certain judges prior to the designation of the appellate panel. This motion stated, in relevant part:

> It is believed and averred by Movant Surrick that Judge Bradley was "fixed" by the Delaware County Republican Organization as a result of a deal between that organization and Justice Larsen whereby Justice Larsen would again exert his political influence on behalf of Judge McEwen who was again seeking to fill a vacant Supreme court seat and, in return, the Delaware County Republican Organization, through its control of the Delaware county Judges, would fix this case.

> In litigation arising out of the termination of the Surrick/Levy law practice . . . Upon appeal to the superior court, judge Olszewski dismissed the appeal not on the basis of anything in the record *or any issue raised by opposing counsel* but on the basis of an alleged procedural defect in the record. Even the most cursory examination of the record will reflect that the alleged defect in the Record relied upon by Judge Olszewski does not and did not exist. It is the belief of Movant Surrick that the decision of Judge Olszewski was based upon outside intervention, as it could not have resulted from any rational legal analysis of the Record.

749 A.2d at 443 (ellipses and emphasis in original).[2]

---

2. Surrick has a well-documented history as an outspoken critic of the Pennsylvania judiciary dating back to his appointment to the Judicial Inquiry and Review Board in 1980. Because these facts are discussed in detail by the Pennsylvania Supreme Court, *see Surrick I*, 749 A.2d at 446-49, we find it unnecessary to repeat them here.

The Office of Disciplinary Counsel investigated Surrick's allegations and, as a result, filed charges against him and convened a Special Hearing Committee of the Disciplinary Board. After due deliberation, the Special Hearing Committee issued a Report and Recommendation concluding that all charges should be dismissed. The Office of Disciplinary Counsel objected to the Report and Recommendation and sought oral argument before the Disciplinary Board. On October 17, 1997, the Board issued an opinion and order rejecting the arguments asserted by the Office of Disciplinary Counsel and dismissing the charges against Surrick.

The Office of Disciplinary Counsel filed a petition for allowance of appeal with the Pennsylvania Supreme Court. The court remanded the case to the Disciplinary Board on April 14, 1998, with instructions that the Board reconsider its prior recommendation in light of the then-recent decision in *Office of Disciplinary Counsel v. Anonymous Attorney A*, 714 A.2d 402 (Pa. 1998).

On remand, the Disciplinary Board determined that Surrick had violated Rule 8.4(c)[3] of the Rules of Professional Conduct (RPC) in making his allegations against Judge Olszewski but found no violation in the allegations against Judge Bradley. The Pennsylvania Supreme Court then granted the parties' cross-petitions for review and directed both sides to file briefs addressing the applicability of its more recent decision in *Office of Disciplinary Counsel v. Price*, 732 A.2d 599 (Pa. 1999). After consideration of the parties' arguments, a unanimous Pennsylvania Supreme Court held that Surrick had violated RPC 8.4(c) with respect to his charges against both Judge Olszewski and Judge Bradley. *Surrick I*, 749 A.2d at 447-49. The court therefore suspended Surrick's license to practice law in the Commonwealth for a period of five years, effective March 24, 2000. *Id.* at 449.

Pursuant to Rule II(B)(2) of the Rules of Attorney Conduct

---

3. RPC 8.4(c) states that "[i]t is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

(RAC) for the Eastern District of Pennsylvania,[4] the District Court, in response to the decision of the Pennsylvania Supreme Court, issued an order on May 10, 2000, requiring Surrick to show cause why reciprocal discipline should not be imposed upon him pursuant to RAC II(D). In his reply, Surrick asserted that reciprocal discipline was inappropriate because the decision of the Pennsylvania Supreme Court lacked proof and violated his rights of procedural due process and free speech. On February 7, 2001, a three judge panel of the District Court, following its review of the state disciplinary proceedings and the arguments of the parties, issued a Report and Recommendation concluding that no reciprocal discipline should be imposed on Surrick. *See Surrick II*, 2001 WL 120078. This recommendation was rejected by a majority of the non-recused active and senior judges of the Eastern District of Pennsylvania, and the matter was referred to a new three judge panel for consideration of the proper punishment. Following a hearing, this second panel issued an Amended Report and Recommendation on June 12, 2001, concluding that Surrick should be suspended for a period of thirty months retroactive to April 24, 2000.

On June 21, 2001, by a vote of seventeen to nine, the twenty-six non-recused active and senior district judges adopted the second panel's Amended Report and Recommendation. *See In re Surrick*, No. MISC. 00-086, 2001 WL 1823945 (E.D. Pa. June 21, 2001) (*Surrick III*). Surrick's thirty month suspension was made retroactive to April 24, 2000, the date of his state court suspension. The suspension expired on October 24, 2002.

Surrick appealed his District Court suspension.

## II. Jurisdiction and Standard of Review

The District Court has the inherent authority to set

4. The Rules of Attorney Conduct (RAC) are codified in Rule 83.6 of the Eastern District of Pennsylvania's Local Rules of Civil Procedure. For ease of reference, Pennsylvania's Rules of Professional Conduct will be referred to throughout this Opinion as "RPC", and the Rules of Attorney Conduct contained in Local Rule 83.6 will be referred to as "RAC".

requirements for admission to its bar and to discipline attorneys who appear before it. *See In re Mitchell*, 901 F.2d 1179, 1183 (3d Cir. 1990); *In re Abrams*, 521 F.2d 1094, 1099 (3d Cir. 1975). We have jurisdiction to review the final order of the District Court pursuant to 28 U.S.C. § 1291. We review district courts' decisions regarding the regulation of attorneys who appear before them for abuse of discretion. *Richardson v. Hamilton Int'l Corp.*, 469 F.2d 1382, 1386 (3d Cir. 1972). Our review of the District Court's interpretation of legal precepts is plenary. *Epstein Family Partnership v. Kmart Corp.*, 13 F.3d 762, 765-66 (3d Cir. 1994).

### III. Discussion

### A. *Mootness*

Because " '[t]he existence of a case or controversy is a prerequisite to all federal actions,' " *Philadelphia Fed'n of Teachers v. Ridge*, 150 F.3d 319, 322-23 (3d Cir. 1998) (quoting *Presbytery of N.J. of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1462 (3d Cir. 1994)), we must begin by examining our jurisdiction to consider the matter before us. Although it is well-established that "bar admissions, bar disciplinary actions, and disbarments are essentially judicial in nature and thus present a case or controversy under Article III," *In re Calvo*, 88 F.3d 962, 965 (11th Cir. 1996), we must determine whether Surrick's appeal was mooted when the term of his District Court suspension expired on October 24, 2002.

As we have previously held, "[a] case will be considered moot, and therefore nonjusticiable as involving no case or controversy, if the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *In re Kulp Foundry, Inc.*, 691 F.2d 1125, 1128 (3d Cir. 1982) (citation and internal quotation omitted). Our analysis of whether a case is moot "traditionally begins with 'the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy.' " *International Bhd. of Boilermakers v. Kelly*, 815 F.2d 912, 914 (3d Cir. 1987) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)).

The existence of a case or controversy, in turn, requires " '(1) a legal controversy that is real and not hypothetical, (2) a legal controversy that affects an individual in a concrete manner so as to provide the factual predicate for reasoned adjudication, and (3) a legal controversy with sufficiently adverse parties so as to sharpen the issues for judicial resolution.' " *Id.* at 915 (quoting *Dow Chem. Co. v. United States Envtl. Protection Agency*, 605 F.2d 673, 678 (3d Cir. 1979)).

Furthermore, "[i]n addition to its threshold constitutional dimension, mootness doctrine incorporates prudential considerations as well." *International Bhd. of Boilermakers*, 815 F.2d at 915. "Thus, in applying the mootness doctrine, courts, in addition to satisfying the requirements of Article III, 'must answer the more policy-oriented question whether the parties before it have, at the time for decision sufficient functional adversity to sharpen the issues for judicial resolution.' " *Id.* (quoting *Dow Chem.*, 605 F.2d at 677-78). Accordingly, " 'the central question of all mootness problems is whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief.' " *Id.* (quoting *Jersey Cent. Power & Light Co. v. State of N.J.*, 772 F.2d 35, 39 (3d Cir. 1985)).

In addressing such questions, we have recognized three exceptions that should be considered prior to any determination of mootness:

> (1) whether the appellant has expeditiously taken all steps necessary to perfect the appeal and to preserve the status quo before the dispute becomes moot, (2) whether the trial court's order will have possible collateral consequences, and (3) whether the dispute is of such a nature that it is capable of repetition yet evading review.

*Kulp Foundry*, 691 F.2d at 1129.

We need not address the applicability of first and third exceptions noted above, as the continuing stigma resulting from his suspension places Surrick's appeal squarely within the second. *See Dailey v. Vought Aircraft Co.*, 141 F.3d 224, 228 (5th Cir. 1998) (finding that the appeal of an

attorney who was disbarred and then reinstated was not moot because even temporary disbarment is harmful to a lawyer's reputation, and "the mere possibility of adverse collateral consequences is sufficient to preclude a finding of mootness") (citation and internal quotation omitted); *see also In re Hancock*, 192 F.3d 1083, 1084 (7th Cir. 1999) (citing *Dailey* for the proposition that a suspended attorney's appeal was not mooted by his payment of the imposed sanction and subsequent reinstatement); *Kirkland v. National Mortgage Network, Inc.*, 884 F.2d 1367, 1370 (11th Cir. 1989) (holding that attorney's appeal of the revocation of his *pro hac vice* status was not moot following dismissal of the underlying case because "the 'brand of disqualification' on grounds of dishonesty and bad faith could well hang over his name and career for years to come"); *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1200 n.14 (11th Cir. 1985) (noting that "the brand of disqualification was not lifted at the close of the proceedings. The disciplinary action and consequent disqualification may expose counsel to further sanctions by the bar and portends adverse effects upon counsel's careers and public image. The effects of disqualification will linger long after the closing of the case. The controversy thus remains live and demands consideration."). Further, Surrick's suspension has a continuing effect on his ability to practice before the District Court, as RAC VII(A) provides that attorneys suspended for more than three months must apply for reinstatement.[5] Thus, we conclude that Surrick's claim satisfies the collateral consequences exception to the doctrine of mootness and that we have jurisdiction to consider the merits of his appeal.

## B. Reciprocal Disciplinary Proceedings

The starting point for our review of federal district court disciplinary proceedings is the recognition that individual district courts, "like all federal courts, ha[ve] the power both to prescribe requirements for admission to practice before that court and to discipline attorneys" who appear before

---

5. Surrick is presently living in Florida and not practicing law, but, as his attorney stated at oral argument, he may some day decide to return to Pennsylvania and to resume his law practice.

them. *Abrams*, 521 F.2d at 1099; *see also In re Kramer*, 193 F.3d 1131, 1132 (9th Cir. 1999) (citing cases for the proposition that "[t]here is little question but that district courts have the authority to supervise and discipline the conduct of attorneys who appear before them."). "This includes the inherent authority to suspend or disbar lawyers," provided such power is "exercised within the parameters of due process." *Kramer*, 193 F.3d at 1132 (citations and internal quotations omitted).

A reciprocal disciplinary proceeding such as the one at issue here, in which a federal court initiates action against a member of its bar based on the outcome of a state disciplinary proceeding against that attorney, requires federal courts to conduct an independent review of the state disciplinary proceeding prior to imposing punishment. Indeed, it is well-settled that, although state bar membership is required of those seeking admission to practice before the federal district courts of a given state, "disbarment by the [s]tate does not result in automatic disbarment by the federal court." *In re Ruffalo*, 390 U.S. 544, 547 (1968). Rather, although the decisions of state courts in such matters are "entitled to respect," they are "not conclusively binding on the federal courts." *Id.*

However, "[i]n striking the appropriate balance . . . district courts must not operate in a vacuum. If the disciplinary proceedings derive from state court action, federal courts are not totally free to ignore the original state proceedings." *Abrams*, 521 F.2d at 1099-1100 (citing *Theard v. United States*, 354 U.S. 278 (1957)). Instead, they must "examine the state proceeding for consistency with the requirements of due process, adequacy of proof and absence of any indication that imposing discipline would result in grave injustice." *In re Jacobs*, 44 F.3d 84, 88 (2d Cir. 1994) (citing *Selling v. Radford*, 243 U.S. 46, 51 (1917)). More specifically, as the Supreme Court has held, federal courts should impose reciprocal discipline unless "an intrinsic consideration of the state record" indicates one of the following infirmities:

> 1. That the state procedure, from want of notice or opportunity to be heard, was wanting in due process; 2, that there was such an infirmity of proof as to facts

> found to have established the want of fair private and professional character as to give rise to a clear conviction on [the part of the federal court] that [it] could not, consistent[ ] with [its] duty, accept as final the conclusion on that subject; or 3, that some other grave reason exist[s] which should convince [the federal court] that to allow the natural consequences of the judgment to have their effect would conflict with the duty which rests upon [the court] not to disbar except upon the conviction that, under the principles of right and justice, [it is] constrained so to do.

*Selling*, 243 U.S. at 51; *see also Theard*, 354 U.S. at 282. RAC II(D), which governed the proceedings below, was enacted on the basis of this ruling. *See In re Pawlak*, No. 94-211, 1995 WL 723177 at *4 (E.D. Pa. Dec. 1, 1995).[6]

Moreover, attorneys subject to reciprocal discipline in federal court bear the burden of demonstrating, "by clear and convincing evidence, that one of the *Selling* elements

---

6. RAC II(D) provides as follows:

> D.   Upon the expiration of 30 days from service of the notice issued pursuant to the provisions of (B) above and after an opportunity for any attorney contesting the imposition of the identical discipline or prohibition to be heard by one or more judges designated by the Chief Judge, this court shall impose the identical discipline unless the respondent-attorney demonstrates, or this court finds, that upon the face of the record upon which the discipline or prohibition in another jurisdiction is predicated it clearly appears:

> > 1.   that the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or

> > 2.   that there was such an infirmity of proof as to give rise to the clear conviction that this court could not, consistent with its duty, accept as final the conclusion on that subject; or

> > 3.   that the imposition of the same discipline or prohibition by this court would result in grave injustice; or

> > 4.   that the misconduct or other basis established for the discipline or prohibition is deemed by this court to warrant substantially different action.

> Where this court determines that any of said elements exist, it shall enter such other order as it deems appropriate.

precludes reciprocal discipline." *In re Kramer*, 282 F.3d 721, 724-25 (9th Cir. 2002) (citing cases). Thus, there is no entitlement to a *de novo* trial before the District Court. *See In re Alker*, 307 F.2d 880, 881 (3d Cir. 1962); *see also Calvo*, 88 F.3d at 967. Rather, the District Court need only "determine whether the record underlying the predicate state disbarment reveals the kind of infirmities identified in *Selling.*" *Calvo*, 88 F.3d at 967 (citation and internal quotations omitted).

Finally, as we noted in *Abrams*, "we perceive our role in reviewing the district court's action to be extremely limited." 521 F.2d at 1101. In particular, it consists of the following:

> (1) To recognize and reinforce an absolute and unfettered power of the district court to admit and to discipline members of its bar independently of and separately from admission and disciplinary procedures of (a) the state courts and (b) this court.
>
> *      *      *
>
> (3) To recognize that an absolute and unfettered power of the district court to discipline lawyers may be circumscribed to the extent the district court, in imposing its disciplinary sanctions, relies upon a state's legal or factual determinations. Stated otherwise, the district court's action may be circumscribed to the extent it depends in whole or in part on a state's actions, either for the commencement of the disciplinary proceedings or for a stated basis in the determination of the sanction imposed.

*Id.* It is against this backdrop that we consider the proceedings at issue here.

### C. Surrick's Due Process and First Amendment Arguments

The issue before us on this appeal is whether the *en banc* District Court abused its discretion in relying on the state court proceedings as the basis for its decision to impose reciprocal discipline upon Surrick. In rejecting the conclusion of the initial panel and adopting the Amended Report and Recommendation, the District Court noted that

it was required to impose reciprocal discipline "unless it 'clearly' appeared to the court" that at least one of the four elements of RAC II(D) was satisfied. *Surrick III*, 2001 WL 1823945 at *1.

Following its review of the state disciplinary proceedings, the District Court determined that none of the RAC II(D) conditions were met in this case. In support of this conclusion, the District Court noted that (1) not even the first District Court panel, which opposed the imposition of reciprocal discipline, concluded that the state disciplinary proceedings violated Surrick's right to due process; (2) there was no infirmity of proof, particularly in view of the fact that Surrick admitted during the state disciplinary proceedings "that he had no objective factual basis for the accusations he made in his sworn affidavit to the state court about purportedly corrupt conduct by a state judge"; and (3) the Amended Report and Recommendation, issued by the second District Court panel, took into account the fact that the five year suspension meted out by the state court exceeded that of other comparable cases, and therefore recommended a suspension of only half that duration. *Surrick III*, 2001 WL 1823945 at *1.

In asserting that the District Court abused its discretion by so concluding, Surrick contends first that the District Court erred in failing to find a due process violation in the Pennsylvania Supreme Court's retroactive application of *Anonymous Attorney A* and of *Price* to his case. He next argues that the District Court's conclusion that a second evidentiary hearing would be futile was based on an improper reading of the initial panel's Report and Recommendation. Finally, Surrick asserts that the imposition of reciprocal discipline violates his First Amendment rights and therefore constitutes a grave injustice. We address each argument in turn.

In considering Surrick's due process argument, we begin by reiterating our prior observation that, although attorney disciplinary proceedings "ha[ve] consequences which remove [them] from the ordinary run of civil case[s]," they are "not criminal in nature." *Abrams*, 521 F.2d at 1099. It therefore follows that the protections normally afforded criminal defendants are not required here. *See In re*

*Palmisano*, 70 F.3d 483, 486 (7th Cir. 1995) (noting that the Supreme Court's decision in *Ruffalo* "does not require courts to employ the procedures of the criminal law in disbarment matters"); *In re Cordova-Gonzalez*, 996 F.2d 1334, 1336 (1st Cir. 1993) (holding that, "[a]lthough attorney discipline proceedings have been called 'quasi-criminal,' *In re Ruffalo*, 390 U.S. 544, 550, 88 S.Ct. 1222, 1226, 20 L.Ed. 2d 117 (1968), the due process rights of an attorney in a disciplinary proceeding 'do not extend so far as to guarantee the full panoply of rights afforded to an accused in a criminal case.'") (quoting *Razatos v. Colorado Supreme Court*, 746 F.2d 1429, 1435 (10th Cir. 1984)); *Rosenthal v. Justices of the Supreme Court of Cal.*, 910 F.2d 561, 564 (9th Cir. 1990) (holding that "[a] lawyer disciplinary proceeding is not a criminal proceeding. As a result, normal protections afforded a criminal defendant do not apply.") (citations omitted).

With this background in mind, we consider Surrick's due process argument. In *Anonymous Attorney A*, the Pennsylvania Supreme Court held that, although it had not expressly decided the issue of the mental state necessary to establish culpability for misstatements made in violation of RPC 8.4(c), it would follow the lead of other states with identical versions of the rule that had rejected a requirement of actual knowledge. 714 A.2d at 406-07. Thus, the Pennsylvania Supreme Court, in accordance with existing decisions in other jurisdictions, held that "a culpable mental state greater than negligence is necessary to establish a *prima facie* violation of [RPC] 8.4(c)," and that "[t]his requirement is met where the misrepresentation is knowingly made, or where it is made with reckless ignorance of the truth or falsity thereof." *Id.* at 407. Surrick now asserts that the District Court erred in failing to conclude that the Pennsylvania Supreme Court's retroactive application of this ruling to his case was a violation of due process that precluded the imposition of reciprocal discipline.

We disagree. It is well-settled "that a judicial alteration of a common law doctrine of criminal law violates the principle of fair warning, and hence must not be given retroactive effect, only where it is 'unexpected and

indefensible by reference to the law which had been expressed prior to the conduct in issue.'" *Rogers v. Tennessee*, 532 U.S. 451, 462 (2001) (quoting *Bouie v. City of Columbia*, 378 U.S. 347, 354 (1964)).[7] Although Surrick contends that "no one could reasonably have anticipated" the legal standards applied to his case by the Pennsylvania Supreme Court, even a cursory review of the state of the law at the time of the conduct in question reveals otherwise. Indeed, while it is true that the Pennsylvania Supreme Court had not formally addressed the issue prior to its decision in *Anonymous Attorney A*, it was nevertheless well-settled at the time of Surrick's conduct that liability under the standards of DR 1-102(A)(4), the predecessor to RPC 8.4(c), extended to reckless misstatements. *See* ABA Comm. on Ethics and Professional Responsibility, Formal Op. 346 (Revised) (1982); *see also People v. Rader*, 822 P.2d 950, 953 (Colo. 1992); *Committee on Legal Ethics of the W.V. State Bar v. Farber*, 408 S.E.2d 274, 284-85 (W. Va. 1991); *Dowling v. Alabama State Bar*, 539 So.2d 149, 152 (Ala. 1989); *In re Silverman*, 549 A.2d 1225, 1238 (N.J. 1988); *In re Zang*, 741 P.2d 267, 280 (Ariz. 1987); *Committee on Professional Ethics and Conduct of the Iowa State Bar Ass'n v. Hurd*, 360 N.W.2d 96, 104 (Iowa 1985). Further, it was well-established in Pennsylvania at that time that the term "misrepresentation" — one of the types of misconduct prohibited by RPC 8.4(c) — included statements made with reckless disregard for the truth. *See, e.g., Berda v. CBS Inc.*, 881 F.2d 20, 27 (3d Cir. 1989) (noting that reckless statements are sufficient to maintain a claim for misrepresentation under Pennsylvania law); *Highmont Music Corp. v. J.M. Hoffmann Co.*, 155 A.2d 363, 366 (Pa. 1959) (holding that "[a] material misrepresentation may be found whether [Defendant] actually knew the truth

---

7. The Supreme Court's ruling in *Rogers*, by its terms, applies only to criminal proceedings. However, we see no basis for refusing to apply the same rationale here. As we noted, *supra*, the full panoply of rights provided in criminal proceedings are not required in attorney disciplinary proceedings. Thus, it necessarily follows that attorneys involved in disciplinary proceedings are not entitled to any greater protection from the retroactive application of judicial rulings than that afforded to criminal defendants.

or not, especially where, as here, it was bound to ascertain the truth before making the representation.").

We therefore reject Surrick's contention that prior to *Anonymous Attorney A*, nothing in the history of RPC 8.4(c) had stated or even foreshadowed that reckless conduct could violate it. Indeed, in view of the foregoing, the Pennsylvania Supreme Court's decision in *Anonymous Attorney A* was neither "unexpected" nor "indefensible by reference to the law which had been expressed prior to the conduct in issue." *Rogers*, 532 U.S. at 462. This is perhaps best illustrated by the fact that the Pennsylvania Supreme Court remanded Attorney A's case for application of the purportedly new standard despite the fact that, as here, the conduct at issue plainly occurred prior to its ruling in that case. *See Anonymous Attorney A*, 714 A.2d at 407. Thus, we hold that the District Court did not err in concluding that the application of the ruling in *Anonymous Attorney A* to Surrick's case was consistent with the requirements of due process.

Similarly, we conclude that the District Court did not err in rejecting Surrick's due process argument regarding the application to his case of the Pennsylvania Supreme Court's decision in *Price*. Surrick contends that the decision in *Price* established a new burden of proof that is unconstitutional both in design — because it purportedly violates the presumption of innocence to which he is entitled — and as retroactively applied to his case. However, the *Price* court was careful to note that the burden of proving misconduct by a preponderance of the evidence rests, as it always has, with the Office of Disciplinary Counsel. *See Price*, 732 A.2d at 603. The ruling in *Price* simply made clear the fact that, once a prima facie case of false allegations in a court pleading has been established, the burden shifts to the respondent to demonstrate "that the allegations are true or that he had an objective reasonable belief that the allegations were true, based upon a reasonably diligent inquiry." *Id.* at 604.

This holding in *Price* was in no way "unexpected" or "indefensible by reference to the law which had been expressed prior to the conduct in issue," *Rogers*, 532 U.S. at 462, as it was already "well-established" prior to the

decision in *Price* "that every court pleading containing an averment of fact not of record is required to state that the assertion is true based upon the pleader's personal knowledge, information or belief," and that such averments must "be supported by oath or affirmation or made subject" to certain penalties. *Price*, 732 A.2d at 603. Thus, at the time Surrick made the allegations contained in the recusal motion, Pennsylvania law already required attorneys to "bear[ ] the burden of establishing a factual basis" for allegations contained in pleadings submitted to the courts of the Commonwealth. *Id.*

Indeed, although the justices differed as to the appropriate punishment, the Pennsylvania Supreme Court was unanimous in its application of the purportedly new ruling to Price himself despite the fact that, as in this case, the record in *Price* had been developed prior to the Pennsylvania Supreme Court's express articulation of this burden of production. *See id.* at 604-05.[8]

Surrick's next argument — that the District Court abused its discretion in concluding that a second evidentiary hearing would be futile — is closely related. Specifically, he asserts that, in view of the purported changes in the requisite mental state and burden of proof that resulted from the Pennsylvania Supreme Court's decisions in *Anonymous Attorney A* and *Price*, he should have been provided a second evidentiary hearing at which he could have addressed the issues raised by these decisions. However, despite having advance notice that the ruling in *Price* might be applied to his case, Surrick never requested either an evidentiary hearing or the reopening of the record during the state proceedings. Thus, any due process violation that might have resulted from the failure to hold a second hearing was waived. *See United States v. Olano*, 507 U.S. 725, 731 (1993) (holding that " '[n]o

8. To the extent that Surrick asserts that the decision in *Price*, which involved RPC 3.3(a)(1) and RPC 8.2(b), may not be applied to his violation of RPC 8.4(c), we reject this argument. Not even the first District Court panel found any basis for this claim. *See Surrick II*, 2001 WL 120078 at *14 (holding that "[w]e see no ground for questioning the [Pennsylvania Supreme Court's] judgment that the *Price* procedural regime was properly transferable to RPC 8.4(c) proceedings.").

procedural principle is more familiar . . . than that a constitutional right,' or a right of any other sort, 'may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.'") (quoting *Yakus v. United States*, 321 U.S. 414, 444 (1944)).

Further, even if this claim had not been waived, Surrick has failed to identify any evidence not presented in the first hearing that would have led to a conclusion that he had an objectively reasonable basis for the allegations contained in his recusal motion. Indeed, despite his claim that he bore no burden of production prior to the ruling in *Price*, Surrick voluntarily offered extensive testimony during the three-day proceedings regarding his purported bases for the statements contained in the recusal motion. In light of this, it is difficult to imagine that he could or would have come forward with any additional information if provided the opportunity to do so in a second hearing. In addition, both the Disciplinary Board and the District Court found, based on the testimony and evidence already in the record, that Surrick's statements were unsupported. *See Surrick III*, 2001 WL 1823945 at *1 ("Mr. Surrick admitted at state disciplinary proceedings that he had no objective factual basis for the accusations he made in his sworn affidavit to the state court about purportedly corrupt conduct by a state judge."); Report and Recommendations of the Disciplinary Bd. of the Supreme Court of Pennsylvania at 29-30 (noting Surrick's admission that the charges leveled against Judge Olszewski were based on conjecture and theory). In view of the foregoing, we simply cannot conclude that the District Court abused its discretion in electing to impose reciprocal discipline despite the absence of a second state court hearing, particularly when such a hearing was never requested by Surrick in the first instance.

Moreover, we note with respect to each of Surrick's first two arguments that no member of the District Court — including the original three member panel which recommended that no reciprocal discipline be imposed — concluded that the state disciplinary proceedings failed to satisfy minimal due process requirements. *See Surrick III*, 2001 WL 1823945 at *1 ("The court determined that there

was no clear deprivation of due process of law. Significantly, while critical of the approach of the Pennsylvania Supreme Court, even Judge Pollak, the author of the panel report of February 7, 2001, acknowledged that the report had not concluded that Mr. Surrick was deprived of his federal constitutional right to due process.").

We further note that Surrick's reliance upon *Ruffalo* is misplaced. In *Ruffalo*, an *additional* charge of misconduct was brought against the attorney in question following the completion of his testimony in the state disciplinary proceedings. *See* 390 U.S. at 546-47. That new charge served as the sole basis for the Sixth Circuit Court of Appeals' decision to impose reciprocal discipline. *Id.* The Supreme Court reversed the judgment of the court of appeals, concluding that the addition of a new charge at that stage of the state court proceedings violated Ruffalo's right of due process, thereby making the imposition of reciprocal discipline inappropriate. *Id.* at 550-551.

Contrary to Surrick's contention, we conclude that the Pennsylvania Supreme Court's application of its rulings in *Anonymous Attorney A* and *Price* did not amount to a new charge, and therefore is not functionally equivalent to the actions held violative of due process in *Ruffalo. Cf. Committee on Prof'l Ethics and Grievances of the Virgin Islands Bar Ass'n v. Johnson*, 447 F.2d 169, 172-74 (3d Cir. 1971) (applying *Ruffalo* to situation in which disciplinary charges were amended based on the testimony of the attorney in question); *see also In re Slattery*, 767 A.2d 203, 210-11 (D.C. 2001) (noting that "we understood *Ruffalo* as holding that due process was violated because the bar association failed to give Ruffalo prior notice that his conduct would amount to, in the words of the Supreme Court, a 'disbarment offense,' with the consequence that Ruffalo was trapped into admitting that he had committed a disciplinary violation . . . . *Ruffalo* rests on the premise that the amendment of charges created an impermissible trap since, at the time of the proceedings, the attorney could not have known that the defense he asserted would subject him to disbarment") (citations and internal quotations omitted).

Thus, we hold that the District Court did not err in concluding that the state disciplinary proceedings complied with minimal due process requirements. As a consequence, it did not abuse its discretion in imposing reciprocal discipline as required by its local rules in the absence of a due process violation. *See* RAC II(D).

We need not address the merits of Surrick's third and final argument — that the state court's ruling violates his First Amendment rights and therefore constitutes a grave injustice pursuant to RAC II(D) — as he failed to adequately raise it before the District Court. *See Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1298 (3d Cir. 1991). Further, to the extent that Surrick's reply brief may be read to challenge the District Court's finding of waiver with respect to the First Amendment argument that was asserted below, we conclude that his failure to identify or argue this issue in his opening brief constitutes waiver of this argument on appeal. *See Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993). Moreover, even if Surrick's objection to the District Court's finding of waiver had been properly presented in his opening brief, we have reviewed the record and find no abuse of discretion.

Finally, we note that the question whether the imposition of either state or reciprocal federal discipline was appropriate under the circumstances of this case is clearly one over which reasonable jurists may disagree. However, even conceding that we would view some of Surrick's arguments as presenting close issues if called upon to examine them in the first instance, we have no difficulty in concluding that the District Court *en banc* did not abuse its discretion in imposing reciprocal discipline.

## IV. Conclusion

For the reasons stated above we will affirm the judgment of the District Court.

COWEN, *Circuit Judge, dissenting.*

I agree with the majority's framing of the question presented on this appeal: whether the District Court abused its discretion by relying on the decision of the Pennsylvania Supreme Court to impose reciprocal discipline. I further agree that we have jurisdiction to consider this appeal, and concur with the majority's review of Surrick's belated First Amendment challenge. However, I part company with the majority's analysis of the Due Process concerns raised by the District Court's countenance of the mental standard and burden of proof ultimately applied to Surrick's Commonwealth disciplinary charge. The Pennsylvania Supreme Court's expansion of the Pennsylvania Rules of Professional Conduct to prohibit reckless misstatements was unexpected under the clearly expressed law of the Commonwealth. Likewise, the Pennsylvania Supreme Court's changes to the proof sufficient to establish attorney misrepresentations materially altered the evidentiary burdens used at Surrick's hearing. The retroactive application of both newly crafted standards impinged the guarantees of Due Process applicable to Surrick's hearing, and presented a grave reason to reject the Commonwealth's decision. Given these flaws, the use of the Commonwealth's discipline as the basis for reciprocal federal discipline was unwarranted, and an abuse of the District Court's discretion. Accordingly, I respectfully dissent from the majority's reasoning and its decision.

# I.

Like the majority, I begin by noting this Court's extremely limited role in reviewing the disciplinary decisions of the District Court. *In re Abrams*, 521 F.2d 1094, 1101 (3d Cir. 1975). The District Court, like all federal courts, enjoys a broad power to regulate and discipline admitted attorneys. *In re Snyder*, 472 U.S. 634, 643 (1985). However, the District Court's "absolute and unfettered" disciplinary authority "may be circumscribed to the extent the district court, in imposing its disciplinary sanctions, relied upon a state's legal or factual determinations." *In re Abrams*, 521 F.2d at 1101. This limitation recognizes that "[w]hile a

lawyer is admitted into a federal court by way of a state court, he is not automatically sent out of the federal court by the same route." *Theard v. United States*, 354 U.S. 278, 281 (1957). Thus, while a state disciplinary decision "is entitled to respect, it is not conclusively binding on the federal courts." *In re Ruffalo*, 390 U.S. 544, 547 (1968); *Theard*, 354 U.S. at 282; *In re Abrams*, 521 F.2d at 1099-1100.

The Supreme Court has outlined three areas of constitutional concern where a federal court should not give controlling weight to a state disciplinary decision: 1) where the state procedure, "from want of notice or opportunity to be heard, was wanting in due process"; 2) where there was such an infirmity of proof "as to give rise to a clear conviction" that the state's judgment cannot be accepted as final; or 3) where some other grave reason exists to reject the decision of the state court. *Selling v. Radford*, 243 U.S. 46, 51 (1917); *see also* R. of Attorney Conduct II.D (codified at R. of Civ. P.for the E.D. Pa. 83.6). This Court must examine the Commonwealth disciplinary proceedings to determine whether Surrick has demonstrated, by clear and convincing evidence, that one of these factors warranted a departure from the presumptive imposition of federal discipline. *In re Kramer*, 282 F.3d 721, 724-25 (9th Cir. 2002); *In re Jacobs*, 44 F.3d 84, 88 (2d Cir. 1994); *In re Rosenthal*, 854 F.2d 1187, 1188 (9th Cir. 1988).

## II.

Like the majority, I also apply *Rogers v. Tennessee*, 532 U.S. 451 (2001) in evaluating whether the Pennsylvania Supreme Court's retroactive decisions satisfied federal Due Process. Attorney disciplinary hearings "are adversary proceedings of a quasi-criminal nature." *In re Ruffalo*, 390 U.S. at 551; *In re Abrams*, 521 F.2d at 1099. Although attorneys are not entitled to the full panoply of protections afforded to criminal defendants, they are "entitled to procedural due process, which includes fair notice of the charge." *In re Ruffalo*, 390 U.S. at 550; *Comm. on Prof'l Ethics and Grievances of V.I. Bar Ass'n v. Johnson*, 447 F.2d 169, 173 (3d Cir. 1971). These procedural safeguards

ensure that the nature of the state's allegation is known before the commencement of a disciplinary hearing so that the accused attorney might meet the charges of misconduct. *In re Ruffalo*, 390 U.S. at 551.

These same concerns are reflected in the Supreme Court's decision in *Rogers v. Tennessee*, which limited the retroactive application of judicial alterations of common law criminal doctrines. *Rogers* holds that while courts have substantial interpretive leeway, the Due Process clause limits "unjustified and unpredictable breaks with prior law" to protect against "vindictive or arbitrary judicial lawmaking." *Id.* 532 U.S. at 462. These concerns are heightened in the highly charged context of attorney disciplinary hearings, where "sensitive personal, institutional and societal interests" converge into a "jural environment that is fraught with tension and devoid of decisional and precedential guideposts." *In re Abrams*, 521 F.2d at 1100. Therefore, judicial alteration of a state rule of professional conduct may not be applied retroactively "where it is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct at issue.' " *Rogers*, 532 U.S. at 462 (quoting *Bouie v. City of Columbia*, 378 U.S. 347, 354 (1964)).

## III.

Against this background, I consider the retroactive application of the recklessness standard to Surrick's misstatements. Pennsylvania Rule of Professional Conduct 8.4(c) states that "[i]t is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation." The plain language of RPC 8.4(c) does not specify a relevant state of mind, and the comments accompanying the rule are similarly silent.[1] At the time of Surrick's action in 1992, no decision of the Pennsylvania Supreme Court had interpreted the mental state required for sanctions under the rule. *Office of*

---

1. Disciplinary Rule 1-102(A)(4), the precursor to RPC 8.4(c), also lacked a mental standard. *Office of Disciplinary Counsel v. Anonymous Attorney A*, 714 A.2d 402, 404-05 & n.7 (Pa. 1998).

*Disciplinary Counsel v. Anonymous Attorney A*, 714 A.2d 402, 405-06 (Pa. 1998).

Citing the text of RPC 8.4(c) and the absence of any interpretive authorities, the Special Hearing Committee of the Disciplinary Board in this case concluded that only knowingly false statements violate the rule. App. at 160. The Special Committee explained that Pennsylvania "did not adopt the language of the Model Rules which contained a more objective 'knew or should have known' standard." App. at 160. Given this distinction, the use of an objective recklessness standard would "disregard[] the plain language of the Rule as promulgated in this Commonwealth." App. at 162. The Special Committee concluded that because there was "no evidence whatsoever presented that Mr. Surrick *knew* that the accusations made were false," no violation of RPC 8.4(c) was established.[2] App. at 162-63.

The Disciplinary Board adopted these conclusions. The Board explained that "negligent or careless conduct was not sufficient to constitute a violation of Rule 8.4(c)." App. at 183. Significantly, the Board based this holding on its then recent decision in *Office of Disciplinary Counsel v. Rebert*, No. 28 D.B. 95 (April 23, 1997) which also found no misconduct for merely mistaken, rather than intentional, misrepresentations.[3] The Disciplinary Board's reliance on *Rebert* is significant because that decision, recaptioned as *Anonymous Attorney A*, was reversed by the Pennsylvania Supreme Court while Surrick's case was on appeal. As I shall discuss, the Disciplinary Board's reliance on *Rebert* to exonerate Surrick reveals that the Commonwealth's designated disciplinary authority did not anticipate the

---

2. Despite this ruling, the Special Committee went on to opine that the evidence failed to show Surrick was unreasonable in his allegations. App. at 163. Although the Special Committee's statement that "we cannot conclude that he . . . did not have a reasonable basis [] to make the assertions that he did" was unnecessary given its interpretation of RPC 8.4(c), its analysis of the evidence at the hearing is nonetheless notable.

3. The unpublished decision of the Disciplinary Board in *Rebert* is available at http://www.courts.state.pa.us/OpPosting/disciplinaryboard/dboardopinions/28DB95.OP.pdf.

standard that would be announced in *Anonymous Attorney A*. I thus turn to the facts, reasoning, and holding of that decision.

The Pennsylvania Supreme Court began its opinion in *Anonymous Attorney A* by noting that no prior decision of either the Supreme Court or the Disciplinary Board had examined the requirement of intent under RPC 8.4(c). The Court explained that while an earlier case did address attorney misrepresentations under DR 1-102(A)(4) (the predecessor rule to RPC 8.4(c)), the case did not "address the mental culpability standard for an attorney's alleged misrepresentations which Petitioner must meet in order to establish a violation . . . ." *Anonymous Attorney A*, 714 A.2d at 405 (discussing *Office of Disciplinary Counsel v. Geisler*, 614 A.2d 1134 (Pa. 1992)). The Court concluded that because "*Geisler* focused on the discipline to be imposed . . . rather than . . . mental culpability, that opinion is of limited value in resolving the question presently before us." *Id.*

The Court then turned to *In re Anonymous*, 126 D.B. 92, 26 Pa. D. & C. 4th 427 (1995), "[t]he sole Disciplinary Board decision addressing a mental culpability standard" under RPC 8.4(c) or DR 1-102(A)(4). *Id. In re Anonymous* involved a disciplinary charge arising out of an attorney's failure to abide by the terms of an informal admonition. In exchange for an informal sanction, the attorney twice agreed to return a client's file. Despite these representations to the Disciplinary Board, the attorney failed to return the materials, leading to an additional disciplinary charge for his false statement. The Disciplinary Board held that while RPC 8.4(c) "does not attach an independent state of mind requirement," the common meaning of "misrepresentation" includes "an assertion not in accordance with the facts." *In re Anonymous*, 26 Pa. D. & C. 4th at 436 (quoting *Black's Law Dictionary* 903 (5th ed. 1979)). Based on this definition, the Disciplinary Board concluded that the attorney's negligent misrepresentation to the Board was "an assertion not in accordance with the facts," and a violation of RPC 8.4(c). *Id.* The Pennsylvania Supreme Court viewed "the egregiousness of the facts in *In re Anonymous*" as the basis for the discipline. *Anonymous*

*Attorney A*, 714 A.2d at 405. Given the severity of the facts, the Court concluded "that this decision is of no precedential value regarding the issue sub judice." *Id.* at 405-06.

The Pennsylvania Supreme Court thus found no authorities explaining the mental state required under RPC 8.4(c), and "given the absence of precedent in Pennsylvania on the issue," proceeded to canvass the case law from other jurisdictions. *Id.* at 406. After reviewing the decisions of four other states, the Supreme Court adopted the interpretation of Colorado's analogous disciplinary rule and held that "no actual knowledge or intent to deceive" is necessary to prove a violation of RPC 8.4(c). *Id.* at 407. Instead, misconduct is established by recklessness, "the deliberate closing of one's eyes to facts that one had a duty to see or state as fact things of which one was ignorant." *Id.* The Court concluded that this holding "clarifies" the finding in *Geisler. Id.*

*Anonymous Attorney A* reveals three facts regarding the state of Pennsylvania law prior to 1998: 1) the text of RPC 8.4(c) does not contain a state of mind requirement; 2) the prior decision of the Pennsylvania Supreme Court in *Geisler* —the only Supreme Court decision to even consider attorney misrepresentations under DR 1-102(A)(4) or RPC 8.4(c)—did not impose a state of mind requirement; and 3) the prior decision of the Disciplinary Board in *In re Anonymous* had "no precedential value" regarding the state of mind requirement. These facts reveal a complete lack of Pennsylvania authority on the meaning of RPC 8.4(c), and explain the Supreme Court's examination of cases outside the Commonwealth.

The Pennsylvania Supreme Court's opinion in *Office of Disciplinary Counsel v. Surrick*, 749 A.2d 441 (Pa. 2000) essentially accepts these conclusions, and acknowledges that no case addressed the mental standard of RPC 8.4(c) before *Anonymous Attorney A. Id.* at 444. Nonetheless, the Pennsylvania Supreme Court viewed the glass as half-empty, reasoning that because "[n]o precedent had declared only intentional conduct would violate" the rule, attorneys must have assumed that some lesser degree of conduct might be actionable. *Id.* at 445. To support this conclusion

the Supreme Court pointed to the outcome in *Geisler*, the case that it previously characterized as offering "limited value" to this issue, and requiring the "guidance" offered by Colorado law. *Id.* at 444. Thus, with no more than a citation to *Geisler* and the unsupported statement that the recklessness standard was not unforeseeable, the Pennsylvania Supreme Court determined that *Anonymous Attorney A* governed Surrick's conduct some eight years before the decision. Given this thin reasoning, the original District Court panel to review Surrick's case understandably found it "hard to escape the conclusion" that *Anonymous Attorney A* decided an issue of first impression. App. at 82.

The majority labors to bolster the Supreme Court's scant analysis in an attempt to argue that given "the state of the law" in 1992, Surrick should reasonably have anticipated the decision in *Anonymous Attorney A*. First, the majority finds it "well-settled" that reckless conduct satisfied DR 1-102(A)(4), the predecessor to RPC 8.4(c). This assertion, however, lacks any citation to Pennsylvania law. Nor could any citation be included, given "the absence of precedent in Pennsylvania on the issue." *Anonymous Attorney A*, 714 A.2d at 406. Instead, the majority cites to an opinion of the American Bar Association interpreting Model DR 1-102(A)(4). But as stated by the Special Committee, Pennsylvania did not adopt the language of the ABA Model Rule in promulgating RPC 8.4(c), and looking to the ABA's interpretations of a objective standard would "disregard[ ] the plain language of the Rule as promulgated in this Commonwealth." App. at 162.

The majority then offers six state court opinions interpreting the disciplinary rules of their individual jurisdictions to extend to reckless misstatements. That fact seems to prove only that forty-four states, or more than three-quarters of the nation, had not extended their rules to include reckless conduct. Thus, while this survey might indeed prove some "general state of the law," it does not support the majority's conclusion that recklessness was a well-settled standard. More importantly, the majority does not accompany these citations with any principle of law that requires attorneys to conform their behavior not only

to the rules of their jurisdiction, but to those promulgated in all others.

Next, the majority offers several decisions holding that misrepresentations are actionable as torts in Pennsylvania if made with a reckless disregard for the truth. *See, e.g., Berda v. CBS, Inc.*, 881 F.2d 20, 27 (3d Cir. 1989) (discussing tort claims for fraud and negligent misrepresentation). But as the majority agrees, this Court has already held that a disciplinary proceeding "has consequences which remove it from the ordinary run of civil case." *In re Abrams*, 521 F.2d at 1099. Using a common law doctrine to expand the meaning of a criminal statute is generally prohibited in Pennsylvania. 1 Pa. Cons. Stat. Ann. § 1928(b)(1) (West 2003) (stating that penal provisions shall be strictly construed). Strict construction is also required for the interpretation of retroactive laws. *Id.* § 1928(b)(2). The civil laws cited by the majority to justify the Pennsylvania Supreme Court's retroactive application of a new disciplinary ruling have little, if any, application to such a quasi-criminal proceeding.

Finally, the majority views the Pennsylvania Supreme Court's decision to remand the case in *Anonymous Attorney A* as evidence that the recklessness standard was not new law. The correctness of the Supreme Court's decision to remand that case, in light of the Disciplinary Board's understanding that only intentional misrepresentations satisfied RPC 8.4(c) and the requirements of 1 Pa. Cons. Stat. Ann. § 1928(b)(2), is not before this Court. As succinctly stated by the District Court panel, the Pennsylvania Supreme Court's decision in *Anonymous Attorney A*, as in *Surrick*, "settles the issue as a matter of Pennsylvania law." App. at 82.

> But it does not settle for this court the federal due process question whether it was fundamentally unfair for the Commonwealth of Pennsylvania, through its highest court, in 2000, to suspend Mr. Surrick from the practice of law for five years because of actions taken at a time—nearly eight years before the court's decision—when there was an 'absence of precedent in Pennsylvania' that his actions were sanctionable.

App. at 82. Our focus on this appeal is whether the application of *Anonymous Attorney A* was unexpected or indefensible by reference to prior law. The Pennsylvania Supreme Court's interpretation of Commonwealth law does not, therefore, substitute for our own independent Due Process analysis.

The majority's reasoning does not support the conclusion that the recklessness standard of *Anonymous Attorney A* was foreseeable. More fundamentally, however, it is unhelpful to examine the general "state of the law" in other jurisdictions, or in other substantive areas, instead of the law of Pennsylvania regarding attorney misrepresentations. It is clear from *Anonymous Attorney A* that no prior law explained the application of RPC 8.4(c). It is clear from the record that the Special Hearing Committee and the full Disciplinary Board both believed that RPC 8.4(c) did not embrace objectively reckless misstatements. And it is clear from the Disciplinary Board's citation to *Rebert*, the very case that would later announce the recklessness standard, that the Board did not anticipate the Pennsylvania Supreme Court's decision. Given the text of RPC 8.4(c), and the absence of any interpretive authority, it is not surprising that even the professional experience and institutional learning of Pennsylvania's highest disciplinary authority was insufficient to predict the Supreme Court's decision.

For these reasons, I am left with the same conclusion as the District Court panel: *Anonymous Attorney A* announced a new standard for attorney misconduct, one that was not obvious from the text of RPC 8.4(c), foreshadowed by prior decisions, or even suggested by the state of Pennsylvania disciplinary law. The better reading of that decision is the one offered by the Pennsylvania Supreme Court itself: a new professional standard drawn from a Colorado Supreme Court decision. The decision to alter RPC 8.4(c) is, without question, entrusted to the Pennsylvania Supreme Court. It is not ours to dispute that decision, or its retroactive application to Surrick's misstatements. It is, however, the role of this Court to determine whether some grave reason exists to reject the District Court's reliance on those judgments. The recklessness standard of *Anonymous*

*Attorney A* was unexpected and indefensible under the law prior to Surrick's conduct. Relying on the retroactive application of that holding to impose reciprocal federal discipline was clearly erroneous.

## IV.

Similar concerns support my conclusion that the retroactive application of the burden-shifting framework announced in *Office of Disciplinary Counsel v. Price*, 732 A.2d 599 (Pa. 1999) constitutes a grave reason to depart from the Commonwealth's sanctions. I begin by outlining the elements of RPC 8.4(c) and the burden of proof applied by the Disciplinary Board at Surrick's hearing. As explained by the Special Hearing Committee, RPC 8.4(c) required the Office of Disciplinary Counsel to prove that Surrick knew his allegations were false. App. at 163 ("The focus of the inquiry, in this case, was to Mr. Surrick's state of mind in making these allegations and not to the ultimate truth or falsity of the allegations."). The Disciplinary Board further explained that the Office of Disciplinary Counsel must prove Surrick's actual subjective knowledge by clear and satisfactory evidence. App. at 178. *Anonymous Attorney A* changed the first of these requirements by adding an objective recklessness standard. Thus, under the new formulation, the Office of Disciplinary Counsel could prove Surrick actually knew his statements were false, or that he made the statements with reckless ignorance of the facts.

*Office of Disciplinary Counsel v. Price* then changed the second requirement. In *Price*, the Pennsylvania Supreme Court affirmed that "the burden of proving misconduct lies with the Office of Disciplinary Counsel," that misconduct must be shown "by a preponderance of the evidence," and that proof of the misconduct must be clear and satisfactory. *Price*, 732 A.2d at 603. The Supreme Court then noted that every fact asserted in a court pleading must be based on either the pleader's personal knowledge, or the results of a reasonably diligent inquiry. *Id.* Synthesizing these requirements, *Price* held that the Office of Disciplinary Counsel may satisfy its burden to prove the alleged misconduct simply by demonstrating that the statements at issue were false. *Id.* at 604. After this initial showing, "[t]he

burden then shifts to the respondent to establish that the allegations are true or that he had an objective reasonable belief that the allegations were true, based upon a reasonably diligent inquiry." *Id.*

The majority views this second alteration as unexceptional given that the burden of proof remains on the Office of Disciplinary Counsel, and that the relevant quantum of evidence remains clear and satisfactory. This explanation, however, does not consider that *what* the Office must prove is no longer the attorney's subjective knowledge, or the objective unreasonableness of the attorney's belief. Instead, the Office need only prove the objective falsity of the statement, after which the attorney carries the burden to either prove the statement true, or to prove a reasonably diligent inquiry supported the erroneous belief. By formulating the burdens in this manner, the Office of Disciplinary Counsel is no longer required to prove (by any measure of evidence) that the attorney actually knew the statements were false, as was the practice before *Anonymous Attorney A.* And the Office need not even prove that the attorney failed to conduct a reasonable inquiry, as seemed to be the requirement after *Anonymous Attorney A.* Under *Price*, therefore, the Office of Disciplinary Counsel is relieved of proving the state of mind requirement added to RPC 8.4(c), and permitted to rest its case solely on the falsity of the statements at issue.

It bears repeating that as with the new recklessness standard, the Pennsylvania Supreme Court's decision in *Price* is relevant only to this Court's consideration of whether to afford Surrick's Commonwealth discipline presumptive force. That question turns, as before, on whether the change in *Price* was unexpected or indefensible. The majority contends that it was not, quoting the Pennsylvania Supreme Court's view that "the pleader in a court proceeding bears the burden of establishing a factual basis upon which his allegations are based." *Price*, 732 A.2d at 603. However, *Price* itself does not cite any authority for this claim, making its presumptive force suspect. Moreover, the relevant issue is not whether Surrick had a duty to verify the contents of his pleading. That duty is unquestionably established by Pa. R. Civ. P.

1023[4] and 1024, and Pennsylvania courts are authorized to impose appropriate sanctions for bad faith violations. Surrick's misstatements might have been the basis for penalties before the Superior Court.

*Price* goes a step further, allowing an attorney's duty of verification under the civil rules to automatically satisfy the Office of Disciplinary Counsel's case under RPC 8.4(c), if the attorney's statements are false. Whether that is a desirable rule is of no moment. That it was an unexpected departure from prior practice is acknowledged by the Pennsylvania Supreme Court's explanation that *Price* "set forth an objective standard" based on a newly crafted shifting burden of production. *Surrick*, 749 A.2d at 445.[5]

The process required during disciplinary proceedings includes, at a minimum, fair notice of the misconduct alleged. *In re Ruffalo*, 390 U.S. at 550; *Johnson*, 447 F.2d at 173. Knowledge of the violation charged, and hence the accompanying elements and burdens, is critical to mounting a proper defense. More importantly, adequate notice protects attorneys from the specter of vindictive and arbitrary discipline. *Rogers*, 532 U.S. at 462. Like the District Court panel, I do not find it necessary to determine whether the retroactive application of *Price* to Surrick's conduct violated federal Due Process. Instead, I would hold that the Due Process concerns implicit in the retroactive application of a new burden of proof provide a grave reason to reject the District Court's reliance on the Pennsylvania Supreme Court's decision. *Price* was unexpected and indefensible under prior law, and the retroactive application of its framework "should not be accepted as adequate for the purposes of disbarment from a federal court." *In re*

4. Rule 1023 was rescinded effective July 1, 2002. New Rules 1023.1-1023.4 continue the requirements of the old rule, and provide additional instruction on remedies for violations.

5. The majority also views the Pennsylvania Supreme Court's decision to apply this new framework to the conduct at issue in *Price* as evidence that the burden allocation was not new law. I find this reasoning irrelevant for the same reasons I disagree with majority's reliance on the Supreme Court's decision to remand *Anonymous Attorney A.*

*Ruffalo*, 390 U.S. at 552 (Harlan, J., concurring). So viewed, the District Court's decision was clearly erroneous.[6]

## V.

I note finally that my disagreement with the majority's analysis implies no view on the substance of Surrick's allegations. With that observation, and for the foregoing reasons, I must dissent from the majority's decision.

A True Copy:
      Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*

---

6. Because I would hold that the retroactive application of *Price* is a sufficiently grave reason to reject the Commonwealth's decision, I need not address Surrick's additional Due Process arguments, or the majority's analysis of those issues.